Robert F. NOLAN, as Administrator of Estate of Jasper Wallace Hall, Deceased, Marjory M. Hall, individually, and Marjory M. Hall, as Guardian ad Litem of Judith Marie Hall, an infant, Plaintiffs-Appellants,

v.

TRANSOCEAN AIR LINES, Defendant-Appellee.

No. 105, Docket 25779.

United States Court of Appeals Second Circuit.

Argued Jan. 5, 1960.

Decided March 2, 1960.

Robert A. Dwyer, New York City (Stuart M. Speiser and Speiser, Quinn & O'Brien, New York City, on the brief), for appellants.

William J. Junkerman, New York City (Maurice L. Noyer and Haight, Gardner, Poor & Havens, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Our principal task, in this diversity of citizenship case, is to determine what the New York courts would think the California courts would think on an issue about which neither has thought. They have had no occasion to do so. But life, here coupled with death, casts up new problems, and the court seised of the case is obliged, as best it can, itself to blaze the trail of the foreign law that it has been directed to follow.

█ The action was brought in the Southern District of New York for the wrongful death of Jasper W. Hall, a resident of South Carolina, who was killed in California in the crash of an airplane operated by defendant. The plaintiffs were an administrator appointed in South Carolina, the widow in her own right, and the widow appointed by the District Court as guardian *ad litem* of her minor child. The administrator alleged two causes of action; the widow alleged one on her own behalf and another as guardian *ad litem*. The jurisdiction of the District Court was predicated on diversity of citizenship, the administrator being a resident of New York and the widow and infant residents of South Carolina and the defendant a

corporation organized and maintaining its principal place of business in California. The administrator, although appointed in another state, was a proper party plaintiff, Fed.R.Civ.Proc. 17(b), 28 U.S.C.A.; N. Y. Decedent Estate Law, McKinney's Consol.Laws, c. 13, § 160.

Defendant moved for summary judgment on the ground that the action was barred as a result of incorporation of the California period of limitations by the "borrowing" provision of the New York statute of limitations, New York Civil Practice Act, § 13. Judge Levet granted the motion (173 F.Supp. 114), and plaintiffs appeal from the judgment of dismissal. We affirm.

Section 13 of the New York Civil Practice Act provides, so far as here pertinent:

> "Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arose, for bringing an action upon the cause of action, except that where the cause of action originally accrued in favor of a resident of this state, the time limited by the laws of this state shall apply. * * * "

The causes of action here asserted arose in California, by virtue of Section 377 of the Code of Civil Procedure of that state, providing that when the death of a person "is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death." Paragraph 3 of § 340 of the Code of Civil Procedure requires that numerous categories of ac-

tions, including actions for wrongful death, be brought within one year.[1] Section 352 of the Code of Civil Procedure provides that if a person entitled to bring an action be a minor when the cause of action accrued, "The time of such disability is not a part of the time limited for the commencement of the action."

California's provisions as to what constitutes minority are found in § 25 of its Civil Code. This reads in part as follows:

> "Minors are all persons under 21 years of age; * * * provided further, that any person who has reached the age of 18 years and thereafter contracts a lawful marriage, or who has contracted a lawful marriage and thereafter reaches the age of 18 years, shall in the first instance upon contracting such marriage, and in the second instance upon reaching the age of 18 years, be of the age of majority and be deemed an adult person for the purpose of entering into any engagement or transaction respecting property or his estate, or for the purpose of entering into any contract, or for the purpose of maintaining or defending an action affecting his marital status, including therein any action or proceeding involving his support or the support or custody of children of the marriage, or determination of property rights, the same as if he were 21 years of age. * * * "

In contrast, under the law of South Carolina, where the Halls resided, all persons remain minors until they attain the age of 21. South Carolina Code, Volume 1, § 10–104(1).

The death occurred on March 20, 1953. Mrs. Hall, who had been married in South Carolina shortly after becoming

---

1. The District Judge held and the parties do not dispute that § 340(3) of the California Code of Civil Procedure is a true statute of limitations going only to the remedy, rather than, as is more often the case with death statutes, American Law Institute, Restatement of Conflict of Laws § 397, a substantive provision affecting the right. Such authority as

exists supports this. See Gregory v. Southern Pacific Co., C.C.D.Or.1907, 157 F. 113; cf. Zellmer v. Acme Brewing Co., 9 Cir., 1950, 184 F.2d 940; Wohlgemuth v. Meyer, 1956, 139 Cal.App.2d 326, 293 P.2d 816, 818. This result would also follow under the test of "specificity" adopted in Bournias v. Atlantic Maritime Co., 2 Cir., 1955, 220 F.2d 152.

15, reached the age of 18 on November 17, 1954, and the age of 21 on November 17, 1957. The action was begun on November 7, 1958.

■ (1) Despite the New York residence of the administrator, appellants argued the case, both in the District Court and before us, on the assumption that it fell within the general rule of § 13 of the New York Civil Practice Act and not within the exception "that where the cause of action originally accrued in favor of a resident of this state, the time limited by the laws of this state shall apply." [2] Nevertheless, because of the serious consequences of affirmance, we have considered whether the case comes within the exception, in which event the administrator might prevail unless the California rule, stated below in our discussion of the child's cause of action, is a part of the cause of action rather than of California's statute of limitations. We conclude it does not. While we have found no authority on the point, we do not believe the courts of New York would permit the policy embodied in § 13 of the Civil Practice Act against opening the courts of that state to suits by non-residents on foreign causes of action that were time-barred in the state creating them, to be overcome by the appointment of a resident of New York as administrator of a non-resident's estate. [3] Since the administrator is thus subject to the California statute of limitations as the

widow and child clearly are, his cause of action would seem barred by the rule referred to, even if California would compute the one year for his bringing suit as running only from his appointment rather than from Hall's death.

(2) We turn therefore to the cause of action asserted by the widow.

■■ In applying § 13 of the Civil Practice Act, the New York courts would take into account not only the one-year limitation of California applicable to actions for wrongful death but "all its accouterments" including the provision tolling the statute during minority. American Surety Company of New York v. Gainfort, 2 Cir., 1955, 219 F.2d 111, 112. The disputed question is how the New York courts would think the California courts would determine the duration of Mrs. Hall's minority. Defendant contends and the District Court held that California would apply Section 25 of its Civil Code despite Mrs. Hall's South Carolina residence and that accordingly her time to bring the action in California ceased on November 17, 1955, when she became 19. [4] Appellants assert the California conflict of laws rule would require the California courts to look to the law of South Carolina, where Mrs. Hall had always resided, to ascertain the duration of her minority.

The parties have cited no authorities determinative of this question and we

---

**2.** We have held that "the time limited by the laws of" New York for a foreign wrongful death, where the limitation of the foreign state is procedural and not substantive, is the six years provided by C.P.A. § 48(2) for actions on a statute. Janes v. Sackman Bros. Co., 2 Cir., 1949, 177 F.2d 928.

**3.** In holding this we have not overlooked the rule, established in Chappedelaine v. Dechenaux, 1808, 4 Cranch 306, 8 U.S 306, 308, 2 L.Ed. 629, "that the federal courts have jurisdiction of suits by and against executors and administrators if their citizenship be diverse from that of the opposing party, although their testators or intestates might not have been entitled to sue or been liable to suit in those courts for want of diversity of citizen-

ship." Mecom v. Fitzsimmons Drilling Co., 1931, 284 U.S. 183, 186, 52 S.Ct. 84, 85, 76 L.Ed. 233.

**4.** We note in passing that § 25 of the California Civil Code makes the attaining of adulthood by a female at 18 dependent upon her having contracted "a lawful marriage." Mrs. Hall was 15 and her husband 17 at the date of their marriage in South Carolina. However, South Carolina, to whose law California would look to determine the validity of the marriage, follows the common law rule permitting males to marry at 14 and females at 12; the ages for licensed marriages with parental consent are 18 for males and 14 for females but absence of a license does not render the marriage illegal. State v. Ward, 1944, 204 S.C. 210, 28 S.E.2d 785.

have found none. Appellants rely on Deason v. Jones, 1935, 7 Cal.App.2d 482, 45 P.2d 1025, and Emery v. Emery, 1955, 45 Cal.2d 421, 289 P.2d 218. In Deason v. Jones, the defendant, originally domiciled in Oklahoma, had obtained a decree in that state authorizing him to transact business with the same effect as if he had attained majority. He subsequently came to California and, before attaining 21, entered into a contract that he then sought to disaffirm. The Court held he might do so despite the Oklahoma decree. Appellants rely on a statement that "the status of all persons within a state is exclusively a matter for that state to determine for itself." [7 Cal. App.2d 482, 45 P.2d 1026.] However, the Court followed this by saying that "in the exercise of a well-established right the Legislature of this state has made its own provisions respecting the contractual rights and obligations of minors. Those provisions were controlling with respect to the contract which was made in this state, and the respondent had acquired no status which exempted him therefrom." Since the Court gave effect to the California statute on minority, even as to one who had previously acquired majority for contracting purposes under the law of his domicile, the case seems more favorable to appellee than to appellants. In Emery v. Emery, Mrs. Emery and two daughters, residents of California, sued Mr. Emery in that state for injuries they had suffered in Idaho in a car driven by the Emery son. The Court held "that disabilities to sue and immunities from suit because of a family relationship are more properly determined by reference to the law of the state of the family domicile" and consequently applied California law. [45 Cal.2d 421, 289 P.2d 223.] While this is apparently a departure from the rule followed in most states, and one urged by eminent authors, Cheatham and Reese, Choice of the Applicable Law, 52 Colum.L.Rev. 959, 974–75 (1952), it has little bearing on what law California would choose to determine the ending of minority for the purpose of bringing suit in its courts. The provision in Fed.R.Civ.Proc. 17(b) that "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile," also relied on by appellants, likewise does not assist in determining to what law the California courts would look in deciding when Mrs. Hall first became entitled to sue in California in her own right.

Despite general statements that matters of status are regulated by the law of the domicile, the courts seem rather to determine capacity to act by applying the law of the state deemed to have the most significant connection with the act. Thus capacity to transfer title to property is governed by the law of the *situs*, and this whether the property be real or personal. American Law Institute, Restatement of the Conflict of Laws, §§ 216, 255.[5] The much discussed case of Milliken v. Pratt, 1878, 125 Mass. 374, held the capacity of a married woman to contract was to be determined by the law of Maine where the contract was made rather than by the law of Massachusetts where she was domiciled. This rule was adopted in the Restatement, § 333.[6] Indeed, the Restatement applies the law of the place of making to determine capacity to enter into the most "status" forming of all contracts—marriage, § 121(e) 5 and illustration 3, although Dean Griswold thinks this may be only a shorthand way of subsuming a reference to

5. Restatement of the Conflict of Laws Second, Tentative Draft No. 5, is still to this effect, although the comments (§ 216 and § 254a) have been altered so that the reference to the law of the *situs* includes its conflict of laws.

6. A perceptive critic, who regards the rule of the Restatement as an oversimplification, agrees that "a return to the rule, rejected by Mr. Justice Gray, that the contractual capacity of a person is governed by the law of the domicile, is not a satisfactory solution." Currie, Married Women's Contracts: A Study in Conflict-of-Laws Methods, 25 U.Chi.L. Rev. 227, 248 (1958).

the "whole law" of the domicile including its conflict of laws and a further reference by the law of the domicile in most cases to the law of the place of contracting. Griswold, Renvoi Revisited, 51 Harv.L.Rev. 1165, 1199 (1938). See In re May's Estate, 1953, 305 N.Y. 486, 114 N.E.2d 4.

Inherent in the conflict of laws rules just reviewed is a desire that all acts with consequences in a state shall have the same consequences regardless of the identity of the actors. This policy would seem peculiarly applicable to a determination of majority incident to the application of a statute of limitations, a matter that has long been recognized as one for the forum. The question here, like so many conflicts questions today, is one of statutory construction—did the California legislature intend § 25 of the Civil Code to apply only to Californians or to persons acting with respect to California whether Californians or not? We think the latter, at least so far as concerns the age at which a person is deemed sufficiently mature to control litigation in California courts. When the California legislature considered that its own brides of 18 had sufficient responsibility to conduct suits in California on their own account, it would hardly demand a greater age of a South Carolina bride to do the same—just as it would scarcely have wished to permit a South Carolina bride of 14 to sue in California's courts in her own name if South Carolina should have thought its females as precocious for suing as for marrying. This is preeminently a case where California would desire to apply to all suitors the law "of the forum, with which the lawyers and judges are more familiar and which can be administered more conveniently," Bournias v. Atlantic Maritime Co., supra, 220 F.2d at page 154.

■ Appellants argue that, under this holding, § 13 of the Civil Practice Act abridges Mrs. Hall's privileges and immunities as a citizen of the United States in violation of Article IV, § 2, of the Federal Constitution, McKnett v. St. Louis & San Francisco Ry. Co., 1934, 292 U.S. 230, 54 S.Ct. 690, 78 L.Ed. 1227. Recognizing that Canadian Northern Ry. Co. v. Eggen, 1920, 252 U.S. 553, 40 S. Ct. 402, 64 L.Ed. 713 forecloses constitutional attack on § 13 on the general basis that the statute limits non-residents to a shorter period than residents for bringing suit, they say that, in contrast to the complainant in the Canadian Northern case, Mrs. Hall never had an opportunity to sue in New York, because § 236 of the Civil Practice Act prevented her from suing in her own name until she became 21 and by that time § 13, as the District Judge applied it, had closed the doors. However, Mrs. Hall could have maintained an action in New York at any time by a guardian ad litem, Civil Practice Act, §§ 201–206, and § 201 states expressly that the rights of an infant to maintain an action "shall not be deferred or delayed on account of his infancy." It is of no moment from a constitutional standpoint that a New York widow of the same age would have had the added privilege of awaiting majority and bringing suit in her own name within the period provided by C.P.A. § 60. For, as said in Canadian Northern Ry. Co. v. Eggen, supra, 252 U.S. at page 562, 40 S.Ct. at page 404, the constitutional requirement is satisfied "if the nonresident is given access to the courts of the state upon terms which in themselves, are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens."

■ (3) We come finally to the cause of action asserted on behalf of the minor daughter. If this stood alone, neither the California nor the New York statute of limitations would be an obstacle, since both were tolled by infancy. The barrier lies in another California rule, namely the holding that § 377 of its Code of Civil Procedure creates a single joint cause of action for wrongful death and that if limitation has barred the action as to an adult parent, the action is also barred as to a minor infant, Sears v. Majors, 1930, 104 Cal.App. 60, 285 P.

321; Haro v. Southern Pacific R. Co., 1936, 17 Cal.App.2d 594, 62 P.2d 441. Appellants claim these cases to be inconsistent in theory with more recent decisions, Secrest v. Pacific Electric R. Co., 1943, 60 Cal.App.2d 746, 141 P.2d 747; Flores v. Brown, 1952, 39 Cal.2d 622, 248 P.2d 922 and Perkins v. Robertson, 1956, 140 Cal.App.2d 536, 295 P.2d 972, that a bar against recovery by one heir because of contributory negligence does not preclude recovery by others. It is not for us to say whether the two lines of cases are logically reconcilable. For Judge Levet was surely right in thinking the New York courts would not refuse to follow California decisions that are directly in point simply because of other decisions of courts of the same level that are alleged to be inconsistent with but in no way reflect on the pertinent authorities.

Judgment affirmed.