91 N.Y.2d 180 (1997)
690 N.E.2d 1249
668 N.Y.S.2d 143
Insurance Company of North America et al., Plaintiffs,
v.
ABB Power Generation, Inc., Defendant.
Court of Appeals of the State of New York.
Argued October 22, 1997
Decided November 25, 1997.
Pollack & Greene, L. L. P., New York City (Stuart I. Parker and Kennard M. Goodman of counsel), for defendant.
Clausen Miller, P. C. (Susan Condon, James T. Ferrini, James M. Hoey, Thomas J. Skeffington and Robert A. Stern, of the Illinois Bar, admitted pro hac vice, of counsel), for plaintiffs.
Chief Judge KAYE and Judges TITONE, BELLACOSA, CIPARICK and WESLEY concur with Judge SMITH; Judge LEVINE concurs in result in a separate opinion.
*182 SMITH, J.
In an appeal requiring the interpretation of New York's borrowing statute, CPLR 202, the United States Court of Appeals for the Second Circuit presented, by certified question, the following inquiry to this Court: "Had this action been adjudicated in the courts of New York, would the timeliness of the contract claims be determined by reference to New York's limitation period or, under CPLR § 202, would the New York courts borrow California's shorter limitation period?" (Insurance Co. v ABB Power Generation, 112 F.3d 70, 73.) We decline to adopt the interpretation given to this State's borrowing statute by the Second Circuit in Stafford v International Harvester Co. (668 F.2d 142) and answer the certified question by stating that CPLR 202 requires a New York court, in the instant case, to apply the California Statute of Limitations.
This appeal involves tort and contract claims between two nonresident companies. In 1985, AES Placerita, Inc. (AES) contracted with a predecessor of ABB Power Generation, Inc. (ABB Power) to design and build a multimillion dollar cogeneration plant in California. In 1988, after ascertaining that the plant met contract performance specifications, AES took control of the plant. However, in January 1991, a steam turbine at the plant suffered a "catastrophic breakdown" requiring the plant to be put out of service for approximately six months while repairs were made. AES turned to its insurers for the cost of repairs and for lost revenues due to the plant shutdown.
The contract between AES and ABB Power contained an arbitration clause providing for the arbitration of all disputes pursuant to the laws of New York and established New York State as the exclusive venue for such arbitration. Thus, in December 1992, AES's insurers, plaintiffs Insurance Company *183 of North America and Fidelity and Casualty Insurance Company of New York, as subrogees of AES, served upon ABB Power a demand to pay more than $5,625,000 in contract and tort damages or enter into arbitration. In refusing to pay the demand, defendant ABB Power argued that the tort claims were not subject to arbitration and the contract claims were barred by California's four-year Statute of Limitations for claims on written contracts.
Plaintiffs commenced a proceeding in New York Supreme Court to compel arbitration and to obtain a declaration on the timeliness of their claims. ABB Power removed the case to the United States District Court for the Southern District of New York. After trial on a stipulated record, the District Court held the contract claims were not time-barred. In so holding, the court relied upon the reasoning of Stafford v International Harvester Co. and concluded that the New York borrowing statute was not applicable. Consequently, the court found that New York's six-year Statute of Limitations on contract actions, rather than California's limitation period, applied and, as such, the actions were deemed timely. On appeal, the Second Circuit opted to seek, by certified question, a definitive pronouncement from this Court on the correct interpretation of this State's borrowing statute, its applicability to the facts presented, and the soundness, under New York law, of the Stafford decision relied upon by the District Court (Insurance Co. v ABB Power Generation, 112 F.3d 70, 73, supra).[1]

I.
To answer the question certified by the Second Circuit, it must be determined whether New York's borrowing statute applies to a cause of action in which all of the operative facts occur outside New York State but, pursuant to agreement by the parties, must be arbitrated in New York. The borrowing statute provides:
"An action based upon a cause of action accruing *184 without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply" (CPLR 202 [emphasis supplied]).
As noted above, the Second Circuit has previously interpreted, in Stafford v International Harvester Co. (668 F.2d 142, supra), the above-emphasized language. In Stafford, plaintiff, a New Jersey resident, was severely injured in an accident occurring in Pennsylvania when the steering mechanism on his truck failed. Plaintiff brought suit in New York against Eastco Truck Sales (a New York corporation), which had performed repairs on the steering mechanism, and International Harvester Company (a non-New York corporation), the manufacturer. Applying the laws of the forum State in order to determine the timeliness of the claims (Guaranty Trust Co. v York, 326 US 99), the District Court applied the New York borrowing statute. The court concluded that because the cause of action "accrued" in Pennsylvania, the shorter limitation period of that State governed the action and barred all of plaintiff's claims.
The Second Circuit reversed in part. In view of the fact that defendant Eastco never had sufficient contacts with Pennsylvania, the court perceived the issue before it to be "whether a New York court would hold that a cause of action accrues (for purposes of applying its borrowing statute) in a jurisdiction which could not exercise jurisdiction over it" (Stafford v International Harvester Co., supra, at 150). The Stafford court, noting the absence of New York case law directly on point, looked to our decision in Martin v Dierck Equip. Co. (43 N.Y.2d 583) for guidance in interpreting the language at issue. In Martin, we interpreted "accruing" in CPLR 202 to refer, in a warranty action, to the point when a suit somewhere could be brought and concluded that until the plaintiff had suffered injury no cause of action "accrued" anywhere (id., at 591). Reading Martin as supporting the conclusion that a cause of action cannot accrue in a jurisdiction where it could not be sued upon, the Second Circuit next turned to the purpose of the borrowing statute. It reasoned that since the purpose of CPLR 202 is "`to protect New York resident-defendants from suits in New York that would be barred by shorter statutes of limitations in other states where non-resident-plaintiffs could *185 have brought suit'" (Stafford v International Harvester Co., supra, at 151 [emphasis in original]), the ability to bring suit in the foreign jurisdiction must be demonstrated before the borrowing statute can be said to apply. In the court's words:
"Insofar as the purpose of the borrowing statute is not to protect its residents from stale claims (as to which New York's own statute of limitations affords adequate protection), but to prevent a plaintiff from forum shopping, it makes no sense at all to apply the shorter limitation of a state where the defendant could not have been sued * * * We therefore hold that the New York Court of Appeals would decide that a cause of action cannot accrue for purposes of New York's borrowing statute in a state which could not exercise jurisdiction over the cause of action" (Stafford v International Harvester Co., supra, at 152-153 [emphasis added]).
Thus, the Circuit Court concluded that the claims against Eastco were governed by New York's limitation period and were not time-barred. However, as no jurisdictional problems were presented for International Harvester, the personal injury action against it was held to have accrued in Pennsylvania, and the shorter Pennsylvania limitation period barred the claim.
In the case presently before this Court, the District Court has extended the reasoning of Stafford. It too looked to the underlying purpose of the statute and determined that the Stafford rationale applied "with equal force" (see, Insurance Co. v ABB Power Generation, 925 F Supp 1053, 1060) because the forum selection clause in the parties' contract explicitly provided that any court proceeding to enforce or interpret the contract's arbitration agreement would take place in New York. Accordingly, since "the parties could not have litigated arbitrability in California absent a waiver of the contractual choice of forum * * * application of the borrowing statute is not necessary to prevent forum shopping" (id., at 1060). The court held that the New York borrowing statute was therefore inapplicable and New York's statutory limitation period would govern the claims.

II.
We conclude that Stafford misconstrues CPLR 202, and that the District Court erred in adopting and extending the Stafford *186 rationale. Several reasons militate against construing the phrase "cause of action accruing without the state" as meaning "cause of action accruing and subject to suit without the state." First, when a cause of action is said to accrue, it normally means that it arises or comes into existence (see, Black's Law Dictionary 21 [6th ed 1990]).[2] This definition readily applies in the context of the origination of a cause of action from some source, that is, the underlying transaction or event. Thus, in this case, in its most literal sense, the place of accrual is the location of the source from which plaintiffs' cause of action originated, i.e., the agreement, the place of performance and the alleged breach, all of which took place in California. This analysis is consistent with our past holdings that "where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (Patrolmen's Benevolent Assn. v City of New York, 41 N.Y.2d 205, 208 [citations omitted]; Doctors Council v New York City Employees' Retirement Sys., 71 N.Y.2d 669, 674-675; Bender v Jamaica Hosp., 40 N.Y.2d 560, 562 ["no rule of construction gives the court discretion to declare the intent of the law when the words are unequivocal"]; see also, Matter of Raritan Dev. Corp. v Silva, 91 N.Y.2d 98, 103, n 1 [departure from legislative text not recommended where the language is unambiguous and the result is not absurd]).
Of course, the literal meaning of the text should not be followed where it is patently inconsistent with the policies or purpose of the statute or where the result would be absurd. That is not the case here. In fact the purposes underlying the borrowing statute do not require that amenability to suit be demonstrated before an action can be said to accrue in a particular jurisdiction. Although we have stated that the primary purpose of CPLR 202 is to prevent forum shopping by a nonresident seeking to take advantage of a more favorable Statute of Limitations in New York (Antone v General Motors Corp., supra, 64 NY2d, at 27-28), hinging application of the borrowing statute on the existence of an available out-of-State forum *187 is not necessary to effectuate that purpose. To be sure, in the instant case, forum-shopping is not a consideration, since the parties in their agreement have designated New York as their forum of choice. Invoking the borrowing statute to apply the California Statute of Limitations here does not in any way undermine the statute's purpose of discouraging forum shopping.
In addition, although deterrence of forum shopping may be a primary purpose of CPLR 202, it is not the only purpose. As part of this State's procedural code, CPLR 202 is designed to add clarity to the law and to provide the certainty of uniform application to litigants (see, Ling Ling Yung v County of Nassau, 77 N.Y.2d 568, 571 [stating that the CPLR is designed to "standardize the State's civil practice"]; Alexander, 1991 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C101:2, 1997 Pocket Part, at 1 [referring to the goal of "ensur(ing) uniformity and predictability in Supreme Court practice"]). This equally important purpose of the borrowing statute is frustrated by a rule that would limit its application to cases where a defendant is amenable to suit in another State. Such a rule would lead to results that are anything but uniform or certain.
For example, requiring a court to determine a defendant's amenability to suit before applying the borrowing statute requires a factual determination that may lead to disparate treatment among defendants. "Under Stafford, the court will often be required to engage in a difficult, hypothetical analysis of whether jurisdiction was obtainable in the forum where the injury occurred. Since the existence of personal jurisdiction is dependent on the facts, some marshalling of facts will often be necessary to decide the hypothetical question posed by Stafford" (1 Weinstein-Korn-Miller, NY Civ Prac ¶ 202.04). Another commentator has noted that limiting the borrowing statute to apply only when personal jurisdiction can be obtained over the defendant would create the following "startling anomaly: the same cause of action for personal injury to the same plaintiff [will] accrue[] in one state for one defendant, and in another state for a second defendant" (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C202:3, at 108).
In sum, we conclude that CPLR 202 requires that a court, when presented with a cause of action accruing outside New York, should apply the limitation period of the foreign jurisdiction if it bars the claim. Only where the cause of action accrues *188 in favor of a New York resident is this rule rendered inapplicable. It matters not that jurisdiction is unobtainable over a defendant in the foreign jurisdiction or that the parties have contracted to be venued in this State. There is no inconsistency in applying the statute in either of these circumstances, and the purposes of the borrowing statute are in no way undermined by the application of the rule to such cases.
Accordingly, the certified question should be answered as follows: under CPLR 202, New York courts would borrow California's shorter limitation period.
LEVINE, J. (concurring).
In my view, applying the plain meaning doctrine here as a basis for rejecting the reasoning of the Second Circuit in Stafford v International Harvester Co. (668 F.2d 142) is problematical (see, majority opn, at 186). First, in addition to the definition of accrue relied upon by the majority, Black's Law Dictionary also defines accrue, as applied to a cause of action, as follows: "A cause of action `accrues' when a suit may be maintained thereon" (Black's Law Dictionary 21 [6th ed 1990] [emphasis supplied]). Moreover, among the five definitions of "accrue" in Webster's Third New International Dictionary (Unabridged) (1966), the most pertinent for a legal context is "to come into existence as an enforceable claim" (id., at 13 [emphasis supplied]).
This is the way the accrual language in the borrowing statute (CPLR 202) was interpreted by this Court, in Martin v Dierck Equip. Co. (43 N.Y.2d 583) where, as the majority writing here points out (majority opn, at 184), we held a cause of action for personal injury in breach of warranty did not accrue until it was amenable to suit, i.e., "when a suit may be maintained thereon" (Black's Law Dictionary, op. cit., at 21) and when it came into existence as "an enforceable claim" (Webster's Third New International Dictionary [Unabridged], op. cit., at 13). It was, therefore, understandable why the Stafford court read our interpretation of CPLR 202 in Martin v Dierck Equip. Corp. as requiring amenability to suit in the foreign jurisdiction before a cause of action could be deemed to have "accru[ed] without the state" (CPLR 202). That is, only then did a cause of action "accrue" in the sense that a suit may be maintained thereon, only then could the cause of action come into existence as an enforceable claim in that jurisdiction (see, Stafford v International Harvester Co., 668 F.2d 142, 151, supra [discussing Martin v Dierck Equip. Co., 43 N.Y.2d 583, supra]).
*189 Thus, with the foregoing equally plausible and appropriate differing meanings of "cause of action accruing without the state," it can hardly be said that the plain meaning of the language of the borrowing statute dictates the result here. Nevertheless, for the other reasons stated in the majority opinion, I agree that the better interpretation of CPLR 202 and of the phrase "cause of action accruing without the state," which produces a clearer bright-line rule and more consistent results, is the interpretation adopted by the majority. Accordingly, I concur.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered as follows: Under CPLR 202, New York courts would borrow California's shorter limitation period.
NOTES
[1] In so doing, the court recognized that "New York is an arbitration capital, and contracting parties have an interest in knowing that bargained-for arbitration procedures will be predictably enforced. Were we simply to apply Stafford's reasoning to this case, parties contracting for arbitration in New York might be lulled into allowing the limitation periods of other states to expire before initiating action. If the New York court should later decide that Stafford's reasoning does not correctly reflect New York law, or is not applicable to arbitration agreements choosing New York venue, reasonable expectations could be expensively undermined" (Insurance Co. v ABB Power Generation, 112 F.3d 70, 73, supra).
[2] We note that CPLR 202 is derived from section 13 of the Civil Practice Act, which used the word "arise" in place of "accrue" when identifying the location of the cause of action. When the CPLR was enacted in 1962, the Legislature substituted the word "accrue" for "arise" and no change in meaning was effected (see, 1962 NY Legis Doc No. 8, at 69; see also, Antone v General Motors Corp., 64 N.Y.2d 20, 27 ["CPLR 202 is a reenactment, without substantive change, of section 13 of the Civil Practice Act"]). Consequently, the word "accrue" in the borrowing statute continues to have the same meaning as "arise."