**Tressa and Paul BENNETT, individually and as parents of, Luke Bennett and Chloe Bennett, minors, Plaintiffs,**

v.

**HANNELORE ENTERPRISES, LTD., Hannelore Gourmet Foods, Ltd., Gourmet Cuisines Corp., Americas Sports Voice, Inc., Angelo Panzarella, individually, Robert W. Seiffert, individually Norman Beiber, individually, and Frank D. Casciari, individually, Defendants.**

No. CV–02–5082 (NGG).

United States District Court, E.D. New York.

Dec. 19, 2003.

Michael L. Spafford, Swidler, Berlin, Sherreff, Friedman, Washington, DC, Susan J. Kivelson, New York City, for Plaintiff.

Bruce Ainbinder, James P. Donovan, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York City, Robert W. Seiffert, Oceanside, NY, for Defendant.

*Memorandum and Order*

GARAUFIS, District Judge.

This is a diversity action for injuries allegedly sustained by Tressa Bennett, her then *in utero* children, and her husband, Paul Bennett. The injuries allegedly were sustained when Tressa Bennett consumed paté produced by Hannelore Enterprises, et al. ("defendants") containing listeria monocytogenes bacteria ("listeria bacteria"). The court now considers defendants' Fed. R.Civ.P. 56 motion for summary judgment in which defendants argue that Tressa and Paul Bennett's ("plaintiffs") claims are barred by the applicable statute of limitations. At this time, the defendants have not moved to dismiss the claims of Luke and Chloe Bennett who were allegedly exposed to the bacteria when they were *in utero*. For the reasons discussed below, the defendants' motion is granted.

## I. Background

For the purposes of defendants' summary judgment motion, I will credit, as I must, the plaintiffs' version of the facts. In August or September 1999, Tressa Bennett consumed D'Artagnan, Inc. brand mousse truffee paté. Plaintiffs' Complaint ("Comp.") at ¶ 24. At that time, Tressa Bennett had been carrying two fetuses for about thirty-two weeks. *Id.* at ¶ 23. On August 16, 1999 and September 14, 1999, Tressa Bennett had ultrasound tests that indicated both fetuses were in good health and developing normally. *Id.* at ¶¶ 23 and 26. Sometime after September 22, 1999, Tressa Bennett developed a fever, chills, and flu-like symptoms. *Id.* at 27. By September 30, 1999, her condition worsened, her fever reached 102 degrees Fahrenheit, and she began to show signs that she was going into labor. *Id.* at ¶ 27. She was immediately admitted to the hospital, and Luke and Chloe Bennett were delivered with a primary C-section in the thirty-fifth week of pregnancy. *Id.* at ¶ 28.

Subsequent to delivery, blood tests for Chloe and Luke Bennett revealed that they had been infected by listeria bacteria. *Id.* at ¶ 28. Tressa Bennett was transferred to the Intensive Care Unit for treatment for sepsis and for listeria bacteria. Tressa Bennett remained in the hospital for treatment until October 6, 1999. *Id.* at ¶ 29. Luke's condition deteriorated to the point where a tube had to be inserted into his heart, and he experienced seizures which caused meningitis and encephalitis. Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion for an Order Pursuant to Rule 56 ("Pl.Mem.") at 3. Both Chloe and Luke were given intra-

venous antibiotics; their veins kept collapsing, however, making it difficult and painful to feed and medicate them. *Id.* Chloe Bennett remained in the hospital for treatment until October 14, 1999. *Id.* at ¶ 31. Luke Bennett remained in the hospital until October 22, 1999. *Id.* at ¶ 32.

The Maryland Department of Health and Mental Hygiene, in consultation with the U.S. Center for Disease Control conducted an investigation of the Bennetts' and others' listeria infections and concluded that the listeria bacteria matched listeria bacteria found in the paté produced by D'Artagnan and consumed by Tressa Bennett. *Id.* at ¶ 33. On December 17, 1999, D'Artagnan issued their first recall notice for 400 pounds of mousse truffee and peppercorn mousse because they were contaminated with listeria bacteria. *Id.* at ¶¶ 35 and 37. This recall later was expanded to include more than 80,000 pounds of paté. *Id.* This D'Artagnan paté was produced by Hannelore Gourmet Foods, Ltd. and Hannelore Enterprises, Ltd. *Id.* at ¶¶ 9–10. Americas Sports Voice, Inc. and Gourmet Cuisine International, Ltd. are the corporate successors of Hannelore Enterprises Ltd. and Hannelore Gourmet Foods, Ltd. *Id.* at ¶ 18. Angelo Panzarella, Robert Seiffert, Norman Beiber, and Frank D. Casciari are owners and officers of these corporate defendants. *Id.* at ¶¶ 14–17.

Luke Bennett already has required physical, occupational, and speech therapy to address developmental problems and continues to exhibit "atypical development." Pl. Mem. at 4. Luke will require further similar therapy and is at risk for developing a number of illnesses, including attention deficit disorder, learning disabilities, and epilepsy. *Id.* Chloe has begun to exhibit indicia of an attachment disorder and may develop learning disabilities. *Id.*

D'Artagnan is alleged to have a history of producing contaminated products. On two prior occasions, D'Artagnan recalled products for fear of listeria contamination, and the defendants had been warned by the U.S. Department of Agriculture Food Safety and Inspection Service that its safety precautions were inadequate prior to producing and distributing the paté consumed by Tressa Bennett. *Id.* at ¶¶ 40–42.

Plaintiffs filed the instant claim on September 18, 2002. Defendants subsequently moved to dismiss Tressa and Paul Bennetts' individual claims on the ground that they were barred by the statute of limitations; however, defendants have moved to dismiss neither Chloe and Luke Bennett's claims nor claims brought by Tressa and Paul for expenses incurred on behalf of Chloe and Luke. *See* Revised Memorandum of Law in Support of Defendants' Motion for an Order Pursuant to Rule 56 ("Def.Rev.Mem.") at 1; Defendants' Reply Memorandum in Support of Defendants' Motion ("Def.Rep.Mem.") at 1 ("The Gourmet Defendants concede that Luke and Chloe Bennett's personal claims and Tressa and Paul Bennett's claims to recover expenses incurred on behalf of Luke and Chloe Bennett are not barred by the statute of limitations.").

## II. Discussion

### A. Summary Judgment

A court may grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001).

### B. Statute of Limitations

#### 1. Applicability of New York's Borrowing Statute

■ Because jurisdiction rests upon diversity of citizenship, this court must apply New York's choice-of-law rules and its statute of limitations. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079; *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Williams v. Infra Commerc Anstalt*, 131 F.Supp.2d 451, 455 (S.D.N.Y.2001) (holding that New York's choice-of-law rule and CPLR 202 applied in diversity case).

■ New York Civil Practice Law and Rules (CPLR) 202 states:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

In this case, plaintiffs acknowledge that they are residents of Virginia. Comp. at ¶¶ 5–6. Further, plaintiffs do not dispute the fact that their cause of action "accrued" in Virginia for purposes of the borrowing statute. *See generally* Pl. Mem. In Opp. Under CPLR 202, a cause of action "accrues" where the injury is suffered as opposed to where the allegedly tortious act occurred. *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529, 693 N.Y.S.2d 479, 715 N.E.2d 482 (1999) ("we have consistently employed the traditional defini-

tion of accrual—a cause of action accrues at the time and in the place of the injury—in tort cases involving the interpretation of CPLR 202"); *Martin v. Dierck*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978) (holding that product liability claim accrued in Virginia for purposes of CPLR 202 where plaintiff was injured in Virginia but product was manufactured in New York); *Williams*, 131 F.Supp.2d at 455 ("For purposes of New York borrowing statute, a cause of action accrues where the injury is sustained rather than where the defendant committed the wrongful acts"). In this case the plaintiffs clearly allege that the injury occurred in Virginia, where Tressa Bennett consumed the paté. Plaintiffs' Counter–Statement of Undisputed Facts at ¶ 1. Because the instant claims are brought by non-residents and accrued in Virginia, the borrowing statute applies in this case.

■ If New York's borrowing statute requires this court to apply Virginia law, then the plaintiffs' claims are clearly time-barred. Under Virginia Code § 8.01–243(A), all claims for personal injuries must be brought two years after the action accrued. The instant personal injury claims were brought approximately three years after Tressa Bennett ingested the contaminated paté and soon thereafter discovered that she had consumed paté containing listeria bacteria. Therefore, if New York's borrowing statute requires this court to apply Virginia law, the plaintiffs' claims are clearly barred by Virginia's two year statute of limitations.

The plaintiffs argue that their claims are not time-barred because a literal application of New York's borrowing statute in this case will not advance the anti-forum shopping purpose of the borrowing statute. Pl. Mem. at 8–11. The plaintiffs argue that the defendants did not have the minimum contacts with the State of Virginia

required for Virginia to exercise personal jurisdiction over the defendants. *Id.* As a result, the plaintiffs never could have brought the instant action against these defendants in Virginia. *Id.* The plaintiffs argue that the New York borrowing statute should not be read literally to require the application of the relevant Virginia statute of limitations because there is no need in cases such as this one to avoid forum shopping. If there was no personal jurisdiction over the defendants in Virginia, there is no concern that the plaintiffs will seek a New York forum in order to obtain a more favorable New York statute of limitations. The plaintiffs cite *Stafford v. Int'l Harvester Co.,* 668 F.2d 142 (2d Cir.1981) as precedent for this purposive reading of CPLR 202.

The plaintiffs are correct that *Stafford* held that "New York's borrowing statute would be read as applying only to statutes of limitations of states where 'suit could have been brought' in order to effectuate the purpose which the statute was designed to serve," *i.e.* preventing forum shopping. *Stafford,* 668 F.2d at 151. However, it is abundantly clear that the New York Court of Appeals has rejected both the holding and reasoning of *Stafford.* In *Ins. Co. of North Am. v. ABB Power Generation, Inc.,* 91 N.Y.2d 180, 668 N.Y.S.2d 143, 690 N.E.2d 1249, 1252–53 (1997), the New York Court of Appeals held that:

> CPLR 202 requires that a court, when presented with a cause of action accruing outside New York should apply the limitation period of the foreign jurisdiction if it bars the claim. Only where the cause of action accrues in favor of a New York resident is this rule rendered inapplicable. It matters not that jurisdiction is unobtainable over a defendant in the foreign jurisdiction or that the parties have contracted to be venued in this State. There is no inconsistency in applying the statute in either of these

circumstances and the purposes of the borrowing statute are in no way undermined by application of the rule to such cases.

Further, the Court of Appeals explicitly stated that "[w]e decline to adopt the interpretation given to this State's borrowing statute by the Second Circuit in *Stafford v. Int'l Harvester Co.,* 668 F.2d at 144." *ABB Power Gen.,* 668 N.Y.S.2d 143, 690 N.E.2d at 1249. Although the language of the Court of Appeals is perfectly unambiguous, in any event the Second Circuit has since concluded that the *Stafford* interpretation of CPLR 202 has been overturned:

> Defendants also argue that because they have not developed sufficient contacts with either New York or Massachusetts for the courts of either state to be capable of asserting *in personam* jurisdiction over them, no cause of action can "accrue" against them in either state for purposes of CPLR 202. This argument was at one point accepted by this Court as reflecting New York Law. *See Stafford v. Int'l Harvester Co.,* 668 F.2d 142, 151 (2d Cir.1981). However, it has now been firmly rejected by the Court of Appeals. *See Ins. Co. of North America v. ABB Power Generation,* 91 N.Y.2d 180, 186, 668 N.Y.S.2d 143, 690 N.E.2d 1249 (1997).

*In re Gaston & Snow,* 243 F.3d 599, 608 n. 7 (2d Cir.2001).

The plaintiffs argue that *ABB Power Generation* can be distinguished from the instant case because that case involved a contract dispute in which the contract included an arbitration clause that required arbitrations to be held in New York. *See ABB Power Generation,* 668 N.Y.S.2d 143, 690 N.E.2d at 1251. The plaintiffs argue that the Court of Appeals' statement in *ABB Power Generation* that "[i]t matters not that jurisdiction is unob-

tainable over a defendant" is mere *dicta.* However, I am unwilling to ignore such clear and unambiguous language from New York's highest court given my obligation to interpret New York law as the New York Court of Appeals would interpret it. This is especially true where the Court of Appeals has described the statute at issue as having language that is "clear and unambiguous." *Id.,* 690 N.E.2d at 1252 (internal citations omitted). Even if this court were inclined to ignore such language, there is no justification to do so in this case because the public policy concerns driving the *ABB Power Generation* decision apply just as forcefully here. In addition to preventing forum shopping, CPLR 202 "is designed to add clarity to the law and to provide the certainty of uniform application to litigants." *Id.* at 1252. Limiting CPLR 202 to cases where the cause of action accrued in a state that possessed personal jurisdiction over the defendants would disturb the statute's goals of "clarity" and "certainty of uniformity" in at least two ways. *See id.* First, such a limitation would require substantial factual analysis in order to answer the hypothetical question of whether personal jurisdiction could have been obtained over the defendant in the state where the action accrued. *See id.* The need for factual analysis creates *ex ante* uncertainty as to which statute of limitations applies. Second, as the Court of Appeals explained, the plaintiffs' interpretation of the statute would create anomalous results: "the same cause of action for personal injury to the same plaintiff [will] accrue [ ] in one state for one defendant, and in another state for a second defendant." *Id.* (internal citations omitted). In short, both the language and reasoning of *ABB Power Generation* require this court to hold that under CPLR 202 the instant cause of action accrued under Virginia law and, as a result, Virginia's relevant statute of limitations applies.

2. *Borrowing Statute and the Privileges and Immunities Clause*

Plaintiffs also argue that "[t]o the extent the New York Court of Appeals' decision in ... [*ABB Power Generation* ] may be construed as requiring an application of Virginia's two-year statute of limitations to the claims of Tressa and Paul Bennett, it runs afoul of the privileges and immunities clause of the United States Constitution." Pl. Mem. at 11. United States Constitution Article IV provides that "[t]he citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. Art. IV § 2. However, it is well-settled that New York's borrowing statute is not unconstitutional merely because it provides non-residents with a different statute of limitations than residents. In *Canadian Northern Ry. Co. v. Eggen,* 252 U.S. 553, 562, 40 S.Ct. 402, 64 L.Ed. 713 (1920), the Supreme Court held that the Privileges and Immunities Clause

> is satisfied if the nonresident is given access to the courts of the state upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens.

While the facts of *Eggen* may be distinguishable from the instant case, more recently the Second Circuit upheld an earlier New York borrowing statute. *See Nolan v. Transocean Air Lines,* 276 F.2d 280, 285–86 (2d Cir.1960), *rev'd on other grounds,* 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961). That statute, similar to the instant statute, provided that for actions that accrued outside the state of New York, New York residents receive New York's relevant statute of limitation while non-residents' actions would be subject to the statute of limitations of the

state in which the action accrued. *Id.* at 285. The Second Circuit concluded that *Eggen* "forecloses constitutional attack" on a statute of limitations "on the general basis that the statute limits non-residents to a shorter period than residents for bringing suit." *Nolan*, 276 F.2d at 285. As a result, this court concludes that CPLR 202 application in this case does not violate the Privileges and Immunities Clause.

### 3. Applicability of CPLR 202 to New York Law Claims

The plaintiffs also argue that New York's "borrowing statute cannot be applied to those claims founded solely upon New York law." Pl. Mem. at 13. The plaintiffs argue that their negligence *per se* and negligent infliction of emotional distress claims are founded solely upon New York law. According to the plaintiffs, "[s]uch claims cannot be deemed to 'accrue' outside the state of New York because they arise under New York law." Pl. Mem. at 13–14. The plaintiffs cite no cases in support of this argument. After having researched plaintiff's argument independently, I have located only one case on point. In *Brown v. Austrian Airlines*, 1997 WL 913334, *8–9 (E.D.N.Y.) (Sifton, J.), the court held that CPLR 202 did not apply where the state in which the action accrued did not confer a private right of action on the plaintiff.

As the court explained in *Brown*, "the equities of the situation favor providing ... [the plaintiff] with a forum in which to redress his grievances." *Brown*, 1997 WL 913334, at *8. The *Brown* court defined the issue as follows: "does the absence of a private right of action where the case accrued equal a statute of limitations of zero days for purposes of CPLR 202, or does it simply render the CPLR 202 analysis inapposite?" *Id.* The *Brown* court did not appear to consider the possibility that Georgia law can establish a statute of limitations for such an action even if Georgia does not create the action itself.

Moreover, since *Brown* was decided, the controlling interpretation of CPLR 202 has shifted from the purposive analysis of *Stafford* to the textualist reasoning of *ABB Power Generation*.[1] The *Brown* decision specifically discusses *Stafford*, albeit in the context of the test for determining where the injury "accrued" under CPLR 202. *Brown*, 1997 WL 913334, at *8. However, even if *Brown* did not explicitly rely upon *Stafford*, as discussed above, there has been a profound shift in the methods used to interpret CPLR 202 since *Brown* was decided. Similarly, as discussed above, the New York Court of Appeals has expressed an unmistakable preference for a robust reading of CPLR 202, which reading was not present when *Stafford* was the controlling interpretation of 202. *See ABB Power Generation*, 668 N.Y.S.2d 143, 690 N.E.2d at 1253 ("Only where the cause of action accrues in favor of a New York resident is ... [CPLR 202] rendered inapplicable.").

Second, the *Brown* court did not appear to consider the possibility that even if the state in which the action accrued did not possess the identical cause of action at issue, the state could have a general or analogous statute of limitations that could be borrowed pursuant to CPLR 202. The *Brown* court concluded that, where the state in which the action accrued possesses no identical cause of action, there are only two possibilities: "does the absence of a private right of action where the case ac-

---

1. While *Ins. Co. of North Am. v. ABB Power Generation, Inc.*, 91 N.Y.2d 180, 668 N.Y.S.2d 143, 690 N.E.2d 1249 (1997) was decided approximately two weeks before *Brown* (which was decided on Dec. 9, 1997), the language of *Brown* makes it clear the court was not aware of *ABB Power Generation* when it decided *Brown*.

crued equal a statute of limitations of zero days for purposes of CPLR 202, or does it simply render the CPLR 202 analysis inapposite?" *Brown,* 1997 WL 913334, at *8. It is entirely possible that Georgia, .the state where the action accrued in *Brown,* possessed no general or analogous statute of limitations to which the *Brown* court could refer. It is also entirely possible that such statutes did exist but that no party called them to the attention of the *Brown* court. Nevertheless, in the instant dispute the defendants have argued that there is, in the least, an analogous Virginia statute of limitations: every personal injury action has a statute of limitations of two years. Va.Code. Ann. § 8.01–243(A) (2003) ("every action for personal injuries, *whatever the theory of recovery* ... shall be brought within two years after the cause of action accrues") (emphasis added). In·those cases where the state in which the action accrued possesses such a generic statute that covers the plaintiffs' claims, CPLR 202 may require the court to borrow the relevant statute of limitations even though the state does not permit the specific and exact cause of action at issue.

 Although there are clearly reasons to question the validity of *Brown* today, this court does not reach the question of whether or not to defer to *Brown's* rationale because this case can be distinguished from *Brown.* In *Brown,* the state in which the action accrued, Georgia, did not provide a cause of action for employment discrimination based on age, whereas, in the instant case, the state in which the action accrued, Virginia, provides causes of action for negligence *per se* and negligent infliction of emotional distress. *Brown,* 1997

WL 913334, at *8. The plaintiffs argue that Virginia law does not provide claims for negligence *per se* and negligent infliction of emotional distress.[2] An analysis of Virginia law indicates that the plaintiffs are incorrect: Virginia does provide causes of action for negligent infliction of emotional distress and negligence *per se.*

Virginia law clearly permits claims for negligent infliction of emotional distress only where the plaintiff was physically injured:

"We adhere to the view that where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotion disturbance. alone. We hold, however, that where the claim is for emotional disturbance *and* physical injury resulting therefrom, there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence. In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury."

*Delk v. Columbia/HCA Healthcare Corp.,* 259 Va. 125, 523 S.E.2d 826, 833–34 (2000), *quoting Hughes v. Moore,* 214 Va. 27, 197 S.E.2d 214, 219 (1973). In Tressa Bennett's negligent infliction of emotional distress claims, she alleges that she suffered physical injury. Comp. at ¶¶ 23–33 and

**2.** In the instant action, the plaintiffs have brought claims for strict products liability on defective product and failure to warn theories, breach of implied warranty of merchantability, negligent manufacture, negligent failure to warn, negligence *per se,* neg-

ligent infliction of emotional distress, and fraud. However, the plaintiffs argue only that Virginia does not provide causes of action for negligent infliction of emotional distress and negligence *per se. See* Pl. Mem. at 13–14.

194. As a result, Tressa Bennett's argument that CPLR 202 does not apply because negligent infliction of emotional distress is not available under New York law clearly fails.

■ Unlike Tressa Bennett, Paul Bennett alleges emotional damages on the basis of the physical injury of others—his wife and children. Comp. at ¶¶ 23–33 and 210. As a result, Virginia does not provide a negligent infliction of emotional distress claim for Paul Bennett. *See Delk*, 523 S.E.2d at 833–34. It is not clear whether *Brown* should be read to require that Virginia possesses an action for negligent infliction of emotional distress that would apply to Paul Bennett in order to trigger CPLR 202, or that *Brown* merely requires some negligent infliction of emotional distress action—even one that does not apply to Paul Bennett—in order to trigger CPLR 202. However, I do not need to reach this question because New York does not provide a claim for Paul Bennett either. New York does not provide a claim for Paul Bennett because he was neither physically injured nor at risk of physical injury. *See Lancellotti, et al. v. Howard,* 155 A.D.2d 588, 547 N.Y.S.2d 654 (2d Dep't.1989) ("The circumstances under which recovery may be had for … [negligent infliction of emotional distress] must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety"). Consequently, irrespective of how *Brown* should be read, Paul Bennett's claims for negligent infliction of emotional distress must be dismissed.

■ The plaintiffs also argue that New York's borrowing statute should not apply to the negligence *per se* claims because the defendants have not violated any Virginia laws "comparable" to N.Y. Agric. & Mkts. § 199–a(1). Pl. Mem. at 13. The defendants argue that Virginia does have a "counterpart" to the New York statute, citing Virginia Code § 3.1–398 (2002). N.Y. Agric. & Mkts. § 199–a(1) states that "No person … shall … sell … in any hotel, restaurant, eating house, or other place of public entertainment any article of food which is adulterated or misbranded within the meaning of this article." In contrast, Virginia Code § 3.1–398 authorizes a Virginia administrative agency to promulgate regulations consistent with the federal Food and Drug Act. Although not cited by the defendant, Virginia. Code. § 3.1–388 states that "[t]he manufacture, sale, or delivery, holding or offering for sale of any food that is adulterated or misbranded" is "prohibited." *Cf. Swift and Co. v. Wells,* 201 Va. 213, 110 S.E.2d 203 (1959) (reasoning that Virginia statute prohibiting the sale of adulterated food for human use was one of several bases for holding a manufacturer of a meat product containing staphylococci organisms liable for damages caused to a consumer of the meat in the absence of contractual privity between the consumer and the manufacturer). Substantial independent research revealed no case holding that § 3.1–388 triggered Virginia's negligence *per se* doctrine. This court concludes, however, that if confronted with the question, Virginia courts would hold that § 3.1–388 creates an action for negligence *per se*. In order to establish a negligence *per se* action in Virginia, a plaintiff must show: (1) the defendant violated a statute that was enacted for public safety; (2) the plaintiff belongs to the class of persons for whose benefit the statute was enacted; and (3) the statutory violation was a proximate cause of her injury. *Robinson v. Matt Mary Moran, Inc.,* 259 Va. 412, 418, 525 S.E.2d 559 (2000). Section 3.1–388 clearly meets this test.

Further, the Virginia statute of limitations of negligence *per se* claims is governed by the type of injury caused. *See Herman & Chancler v. McCarthy Enterprises, Inc. & Lewis Applicators,* 2002 WL 31974659 (Va. Cir. Ct.) (holding that a negligence *per se* claim for property damage is governed by Va.Code § 8.001–243(B), which governs property damage statute of limitations). As a result, a personal injury negligence *per se* claim is governed by Virginia Code § 8.01–243(A), which establishes a two year statute of limitations for "every action for personal injury actions, whatever the theory of recovery." While it is by no means certain that Virginia law currently holds that a violation of § 3.1–388 constitutes negligence *per se,* this court finds that Virginia does possess such an action to the extent necessary to provide an analogous action for the purposes of the New York borrowing statute. As a result, the plaintiffs' arguments that CPLR 202 should not apply to the New York State law claims for negligence *per se* and negligent infliction of emotional distress fail.

### III. Conclusion

Pursuant to CPLR 202, the court must borrow Virginia's two-year personal injury statute of limitations for Tressa and Paul Bennett's individual claims. Because their claims were filed more than two years after the cause of action accrued, their individual claims are clearly barred by the statute of limitations. Consequently, the defendants' motion to dismiss the individual claims of Tressa and Paul Bennett as barred by the statute of limitations is GRANTED.

SO ORDERED.