Brooks v M&T Bank (2004 NY Slip Op 50462(U))

[*1]

Brooks v M&T Bank

2004 NY Slip Op 50462(U)

Decided on February 18, 2004

Supreme Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 18, 2004

Supreme Court, Monroe County
GREGORY R. BROOKS,
Individually and as Trustee of
BRIDGEWOOD TRUST
and PROPERTY TRUST,

 Plaintiffs, -vs- 
M&T BANK,
 

 Defendant.

2001/01828

Attorney for Plaintiffs:John M. Bansbach, Esq.
Bansbach, Zoghlin & Wahl, P.C.
31 Erie Canal Drive, Suite A
Rochester, New York 14626
Attorney for Defendant:John Krenitsky, Esq.
Manufacturers and Traders Trust Company
One M&T Plaza
Buffalo, New York 14240

Thomas A. Stander, J.
The Defendant, M&T Bank ("Bank), submits a motion seeking summary judgment dismissing, with [*2]prejudice, any claim asserted by Plaintiffs, Bridgewood Trust and Property Trust[FN1] ("Plaintiffs" or "Customer"), for damages against M&T Bank based on checks bearing alleged unauthorized maker's signatures pursuant to a one-year contractual limitation of actions provision, NYUCC §4-406(2)(a) and other bases as set forth in the motion papers; or in the alternative dismissing with prejudice, any claim asserted by Plaintiffs, Bridgewood Trust and Property Trust, for damages against M&T Bank based on checks bearing alleged unauthorized maker's signatures that were posted to their respective accounts more than fourteen days after the issuance of the first statement showing the first alleged unauthorized items pursuant to NYUCC §4-406(2)(b).
The Plaintiffs, Gregory R. Brooks as Trustee of Bridgewood Trust and Property Trust, submits a cross-motion for summary judgment on the complaint in favor of Plaintiff as Trustee of Bridgewood Trust in the amount of $2,694.96 and in favor of Plaintiff as Trustee of Property Trust in the amount of $37,381; together with interest from January 30, 1998.
I.FACTS
The Plaintiffs commenced this action against the Defendant, M&T Bank, alleging a claim for damages for violation of the UCC §4-406 in the payment of allegedly forged documents and a claim for breach of contract.
In December 1996 Gregory R. Brooks, as the Trustee of the Bridgewood Trust and Property Trust, opened checking accounts for each trust with M&T Bank. For each of these accounts the Trustee completed and executed a "Fiduciary Deposit Account Opening Request".
These trusts received services relating to property management from Gemstone Management, LLC; an entity formed and controlled by Gregory Brooks. From 1993 to January 1998 Gemstone Management, LLC employed Leslie O'Brien to maintain the books and records for the trust entities. Leslie O'Brien was not authorized to draw checks on the accounts of Bridgewood Trust and Property Trust. Plaintiff asserts that from January 1997 through February 1998 O'Brien stole and embezzled money from the property management business by forging Gregory R. Brooks name as drawer on the checking accounts of Bridgewood Trust and Property Trust.
The alleged forged checks at issue are shown on monthly M&T Bank statements ending between October 30, 1997 and January 30, 1998 for Bridgewood Trust and March 28, 1997 and January 30, 1998 from Property Trust. The amount of the forged checks written on the Property Trust account is $38,815.05 and the amount written on Bridgewood Trust account is $2,619.96. The first check paid by M&T Bank bearing an alleged forged maker signature posted to the account of Property Trust on March 11, 1997; and the last check posted on January 27, 1998. The first check paid by [*3]M&T Bank bearing an alleged forged maker signature posted to the account of Bridgewood Trust on October 21, 1997; and the last check posted on January 9, 1998.
Gregory Brooks, as the Trustee of Property Trust and Bridgewood Trust admits that he discovered the alleged forgeries in late December of 1997 or early January 1998. He detected the forgeries when he, for the first time, reconciled the bank statements. M&T Bank issued credits to the account of Property Trust in the amount of $2,633.73.
II.SUMMARY JUDGMENT BASED ON ONE YEAR CONTRACT TERM FOR COMMENCING ACTION
The Defendant claims summary judgment is warranted based upon a one-year contractual limitation for commencing an action contained in the Commercial Deposit Account Agreement. The Plaintiff, Trustee, asserts that he never opened commercial accounts, was never given a document entitled "Commercial Deposit Account Agreement" and he never agreed to nor received such Agreement. The Trustee avers that he opened two fiduciary accounts and the evidence presented demonstrates that the Trustee opened two fiduciary accounts.
The Defendant submits an affidavit of Nancy Reinke averring that she was employed by M&T during the period of March 1997 through January 1998 and sets forth the policies and procedures for opening accounts. The Bank asserts that upon the opening of a fiduciary account the customer was provided with the "Commercial Deposit Account Agreement" and that this was the only agreement the Bank had for a fiduciary account. The Defendant relies upon the language contained in the "Fiduciary Deposit Account Opening Request"documents executed by the Trustee. This document contains language that the Depositor agrees to the terms and conditions in each of the Bank's deposit account agreements, features and terms brochures and schedules governing accounts of this type.
The Plaintiff Trustee opened the accounts at issue in December 1996; therefore, the testimony of Nancy Reinke concerning the policies and procedures for opening accounts in March 1997 is not relevant. Further, the opening account request does not specify which account agreements are effective on the fiduciary account.
The Trustee has raised an issue of fact as to whether the "Commercial Deposit Account Agreement" was provided as part of the information concerning the fiduciary deposit accounts opened in December 1996. The motion of the Defendant, M&T Bank, for summary judgment dismissing with prejudice any claim asserted by Plaintiffs, Bridgewood Trust and Property Trust, for damages against M&T Bank based on checks bearing alleged unauthorized maker's signatures pursuant to a one-year contractual limitation of actions provision contained in the "Commercial Deposit Account Agreement" is DENIED.
[*4]
III.SUMMARY JUDGMENT BASED ON UCC §4-406
The Defendant, M&T Bank, submits a motion seeking summary judgment dismissing, with prejudice, any claim asserted by Plaintiffs, Bridgewood Trust and Property Trust, for damages against M&T Bank based on checks bearing alleged unauthorized maker's signatures that were posted to their respective accounts more than fourteen days after the issuance of the first statement showing the first alleged unauthorized items pursuant to UCC §4-406(2)(a) and (2)(b). Section 4-406 of the UCC addresses a customer's duty to discover and report unauthorized signatures on checks.
A.UCC §4-406(2)(a) and (2)(b)
The provision relied upon by Defendant at §4-406(2)(a) and (b) sets forth that the customer of the bank is precluded from asserting claims for losses for unauthorized signatures if the bank establishes that the customer failed to comply with the duties of reasonable care and promptness to examine the account statement to discover any unauthorized signatures. The Defendant claims that the Plaintiffs did fail to comply with their duties of reasonable care and promptness to discover the forged signatures and thus are precluded from asserting the claims for damages for payment on forged checks.
The affidavits and evidence presented by the Plaintiffs do not refute that the Plaintiff Trustee did not review or reconcile the statements for the accounts of Property Trust or Bridgewood Trust. The employee of the property management business, Leslie O'Brien, forged Gregory Brooks name on over 70 checks over a period of ten months before Gregory Brooks reconciled the bank statements for the trust entities and discovered the employee's conduct. Further the evidence shows that the Trustee, to his peril, employed the same person to handle the accounts of these two Trusts and to reconcile all the statements.
The Plaintiffs fail to present any proof to demonstrate a question of fact on the issue of whether the Trustee failed to comply with his duties of reasonable care and promptness to discover the forged signatures. Thus, there is a prima facie showing that the Defendant would be entitled to summary judgment under UCC §4-406(2); however, there is a statutory exception to this preclusion.
B.UCC §4-406(3) Exception
The exception at UCC §4-406(3) sets forth that "the preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s)" (UCC §4-406[3]). The Court of Appeals has addressed the application of this exception:

Under UCC 4-406(3), as comment 4 to that section underscores, the customer who wishes to invoke the exception to UCC 4-406(2) preclusion bears the burden of establishing that the bank also acted without ordinary care in paying the items. Section 4-406 does not, [*5]however, define ordinary care, nor do the Official Comments specify what the customer is to prove or how. Instead, ordinary care in article 4 generally is discussed in the Official Comments to section 4-103, where it is noted that "ordinary care" is used "with its normal tort meaning and not in any special sense relating to bank collections." (UCC 4-103, comment 4). It would appear, therefore, that a customer could prove a bank lacked ordinary care by presenting any type of proof that the bank failed to act reasonably (emphasis added).
(Putnam Rolling Ladder Co., Inc. v Manufacturers Hanover Trust Co., 74 NY2d 340,346[1989]; see Monreal v Fleet Bank, 95 NY2d 204,207 [2000]; Aikens Construction of Rome, Inc. v Simons, 284 AD2d 946 [4th Dept. 2001]).
The Bank does not have any burden of proof under UCC §4-406(3). The burden to demonstrate that the Bank acted without ordinary care in paying the forged items is on the Customer (Id.). In this summary judgment motion, the burden is upon the Plaintiff Customer to submit evidence that raises a question of fact requiring a trial regarding whether the Defendant Bank failed to act reasonably (see CPLR §3212).
In Putnam Rolling Ladder the Court of Appeals held that the evidence was sufficient to show that the bank's inspection procedures "were so superficial as to offer no realistic opportunity to detect forged checks" (Putnam Rolling at 346). The evidence submitted at trial was that using the identical, routine procedures for check review there were five facially defective checks paid by the Bank.[FN2] In Putnam Rolling Ladder there was some evidence presented by the customer to establish lack of ordinary care on the part of the bank in paying the items.
The statute is clear that it is the customer's burden to establish lack of ordinary care on the part of the bank. The Court of Appeals delineated that a customer can meet this burden "by presenting any type of proof that the bank failed to act reasonably" (Putnam Rolling Ladder Co. at 74 NY2d 346). Here, the Plaintiff has not presented any evidence to raise a question of fact as to whether the Bank lacked ordinary care in paying the items presented or failed to act reasonably.
Notwithstanding the Plaintiffs' failure to provide their own proof, the Plaintiffs attempt to demonstrate that the Bank failed to act reasonably by relying on the failure of the Bank to disclose its standard of care. The parties arguments on the standard of care of a bank flow from the general definition of "ordinary care" under UCC §4-406(3) and from the safe harbor provisions set forth in [*6]UCC §4-103(3).
1.Evidence of Plaintiffs
The Plaintiffs assert that there was never any disclosure by the Bank of it's instruction manual, employee directions, policy statements, clearinghouse rules, or any other documents used relative to the detection of forged checks in the years 1996-1998. Further, Plaintiffs rely upon the testimony of Defendant's witnesses who testified that they had no knowledge of clearinghouse standards and did not know what procedures were in place for the tellers when cashing checks. The Plaintiffs assert that this lack of evidence shows that the Bank failed to act reasonably and the Bank departed from its standard of care when it failed to follow clearinghouse rules and general bank usage.
Even though there is no evidence presented of any acts or inaction by the Bank or its employees to show the Bank may have failed to act reasonably nor that the Bank failed to follow general bank usage, clearinghouse rules, or any other official or quasi-official rules of collection, Plaintiffs argue that, as a depositor, it has no mechanism to demonstrate lack of ordinary care on the part of M&T Bank when the Bank has failed to show or disclose its standard of care. Plaintiffs assert that the Bank has the obligation to show its standard of care, in order for the Plaintiffs to meet its burden of demonstrating lack of ordinary care.
2.Safe Harbor Provision of UCC §4-103(3)
The Defendant, M&T Bank, argues that Plaintiffs' reasoning improperly shifts the burden of proof to the Bank to establish it used "ordinary care" under UCC §4-406(3). This Court agrees. For the exception under UCC §4-406(3) to be operative, the burden is on the Plaintiffs to establish lack of ordinary care. Plaintiffs' bootstrap argument, requiring the burden of proof of the standard of care to be imposed upon the Bank in order for Plaintiffs to meet their burden of proof under UCC §4-406(3), is an improper reading of the UCC.
The Defendant, Bank, has no burden to establish a standard of care unless it elects to use the "safe harbor" provision set forth at UCC §4-103(3).[FN3]

(3) Action or non-action approved by this Article or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, action or non-action consistent with clearing house rules and the like or with a general banking usage not disapproved by this Article, prima facie constitutes the exercise of ordinary care.
(UCC §4-103[3]). If the Bank wishes to rely upon the statutory prima facie showing of the exercise of ordinary care, then the Bank has the burden to show evidence consistent with the "safe harbor" statute.[FN4]
Where, as here, the Bank does not rely upon the "safe harbor" to establish that it exercised ordinary care with the Plaintiffs, the Bank has no obligation or burden to show that it complied with clearing house rules or general banking usage. The Bank is not required or compelled to exercise its rights under the "safe harbor" provision afforded by UCC §4-103(3). The Bank is not entitled to a prima facie showing of the exercise of ordinary care in defense of the customer's prima facie showing, if any, of the Bank's lack of ordinary care.
This tactical decision of the Bank to not seek the "safe harbor" protection of UCC §4-103(3), has no impact upon the burden of the Customer under UCC §4-406(3) to establish "lack of ordinary care on the part of the bank in paying the item(s)" (UCC §4-406[3]). It is also true that in presenting its evidence the Customer is not required to disproof the "safe harbor" factors as "a necessary part of the plaintiff's direct case against the bank for failure to exercise ordinary care"[FN5] (Putnam Rolling at 347). Simply stated, the Customer must comply with its burden, to establish lack of ordinary care on the part of the bank in paying the items, by any evidence (UCC §4-406[3]; see Putnam Rolling Ladder at 346).
Here, the Plaintiffs assert that the Bank's failure to show or disclose its standard of care makes it impossible for a customer to demonstrate a lack of ordinary care necessary for the exception at UCC §4-406(3). However, contrary to the Plaintiffs' assertions, the Bank responded to the Plaintiffs' [*7]discovery requests by providing responses to the Notice to Produce.[FN6] Although the actual documents produced are not submitted on this motion, the discovery responses were not objected to by the Plaintiffs. Further, UCC §4-103(2) indicates that official or quasi-official rules of collection have the effect of agreements to establish standards:

(2) Federal Reserve regulations and operating letters, clearing house rules, and the like, have the effect of agreements under subsection (1), whether or not specifically assented to by all parties interested in items handled.
(UCC §4-103[2]; see UCC §4-103 Official Comment 3.) The Plaintiffs do not submit any of these official or quasi-official rules of collection to show a lack of ordinary care on the part of M&T in paying the allegedly forged checks.[FN7]
The Plaintiffs argue that a question of fact is raised by the Bank's failure to establish that it complied with clearing house rules or met general banking usage. However, the Plaintiffs' position that failures by the Bank demonstrate a question of fact on lack of ordinary care or failure to act reasonably in paying the forged checks under UCC §4-406(3), is not supported by the UCC provisions. The Plaintiffs do not present any evidence to raise a question of fact on whether the Bank lacked ordinary care in paying the allegedly forged checks of the Plaintiffs.
3.Conclusion
The Defendant has demonstrated that it is entitled to summary judgment under UCC §4-406. The Plaintiff has the burden pursuant to UCC §4-406(3) to establish lack of ordinary care on the part of the Bank in paying the forged items. At this summary judgment stage, the Plaintiff must show evidence to raise a question of fact on whether the Bank lacked ordinary care in paying the forged [*8]checks. The Plaintiff may prove a lack of ordinary care "by presenting any type of proof that the bank failed to act reasonably" (Putnam Rolling Ladder at 346).
On the evidence presented on these motions for summary judgment there is no question of fact presented as to whether the Plaintiff Customer established lack of ordinary care on the part of the Defendant Bank in paying the items at issue. The motion of the Defendant for summary judgment based upon UCC §4-406 is GRANTED. The motion of the Plaintiffs for summary judgment on their complaint for the amounts asserted due is DENIED.
O R D E R
Based upon all the papers submitted in support and in opposition to these motions, upon the above Decision, and after due deliberation, it is hereby

ORDERED that the motion of the Defendant, M&T Bank, for summary judgment dismissing, with prejudice, any claim asserted by Plaintiffs, Bridgewood Trust and Property Trust, for damages against M&T Bank based on checks bearing alleged unauthorized maker's signatures that were posted to their respective accounts more than fourteen days after the issuance of the first statement showing the first alleged unauthorized items is GRANTED, pursuant to UCC §4-406; it is further
ORDERED that the motion of the Plaintiffs, Gregory R. Brooks as Trustee of Bridgewood Trust and Property Trust, for summary judgment on the complaint in favor of Plaintiff as Trustee of Bridgewood Trust in the amount of $2,694.96 and in favor of Plaintiff as Trustee of Property Trust in the amount of $37,381, together with interest from January 30, 1998, is DENIED; it is further
ORDERED that all other motions are DENIED; and it is further
ORDERED that the Complaint is DISMISSED against M&T Bank.
Dated:February , 2004
Rochester, New York
__________________________________________
Thomas A. Stander
 Supreme Court Justice
Footnotes

Footnote 1: By Order of July 17, 2003 the Court determined that Gregory R. Brooks has no claim in his individual capacity and dismissed all claims brought by this individual.

Footnote 2: These facially defective checks consisted of checks requiring two signatures, which were paid with only one signature, during the same period as the forged checks were paid. The Court, at trial, permitted this testimony to show that the bank's check-processing methods were not reasonable. 

Footnote 3: Although this section does not set forth which party bears the burden of proof, the Court of Appeals held that the burden rests with the bank (Putnam Rolling at 347).

Footnote 4: This "safe harbor" provision mitigates the unfairness inherent in the loss-shifting scheme of UCC §4-406, where the entire loss may be asserted against the bank even when the customer is the negligent party (see Putnam Rolling at 347). Section UCC 4-103(3) offers the bank the protection of showing it "acted in accordance with general banking rules or practices, [to] ensure that its conduct at least prima facie meets an ordinary care standard" (Id.). If the bank fails to adduce any evidence on whether its check-cashing procedures were consistent with clearing house rules or general banking usage, then the bank is not entitled to the "safe harbor" of UCC §4-103(3) (Id.). 

Footnote 5: The Court of Appeals stated "[G]iven the breadth of what can qualify as "general banking usage" [citation omitted], it is at the least inefficient to impose on the customer the burden of disproving all these possibilities, in the absence of any indication on the bank's part of which general practices support its own. . . . It is both awkward and purposeless to require plaintiff to establish the existence of relevant rules and usage, and then to demonstrate either that defendant's action was inconsistent with them or that the rules and usage were unfair or unreasonable (citation omitted). Unless a defendant advances a genuine issue on this point, it is unnecessary and potentially confusing to ask a plaintiff to make both sides of this issue" (Putnam Rolling at 348). 

Footnote 6: The Plaintiff's Notice to Produce at Question #10 requested "M&T Bank instruction manual, employee directions, policy statements, clearinghouse rules and any other documents in use by M&T Bank in the years 1996 through 1998 related to the detection of forged and altered checks." The Bank's response is to "See Documents Produced by Defendant Pursuant to Plaintiffs' Disclosure Demands #9". Neither party submits those documents responsive to this discovery request.

Footnote 7: A customer may attempt to demonstrate a banks failures with regard to complying with the official or quasi official rules of collection or general banking usage to show a question of fact on whether the bank lacked ordinary care in paying the items. However, such an approach places the burden on the customer to discover the rules of collection or general banking usage of the bank and to show that such rules or usage were violated to a degree necessary to establish a "lack of ordinary care".