OPINION OF THE COURT
 

 Rosenblatt, J.
 

 After a bank makes a statement of account available to its customer, the customer has one year to assert claims against the bank for negligently paying checks bearing alterations or forged signatures of the customer
 
 (see,
 
 UCC 4-406 [4]). We are asked to determine when the one-year period begins to run where, owing to the actions of a single wrongdoer, a bank charges its customer’s account for a series of checks paid over a span of several years. Does the first statement of account start the clock for all future claims arising from that wrongdoer’s repeated actions or does each statement carry a one-year period of its own? We conclude that each statement carries its own one-year period.
 

 Plaintiff, a physician, maintained a checking account with Fleet Bank. From 1988 through May 10, 1995, his bookkeeper purportedly embezzled money by forging plaintiffs name on his checks or altering the names of payees. During this period, the bank regularly furnished plaintiff with statements of account and canceled checks. Plaintiff reported the embezzlement to the bank on May 18, 1995, the day after he discovered it. He then sued the bank, alleging that it was negligent in paying the forged or altered checks.
 

 In its defense, the bank asserted that UCC 4-406 (4)’s one-year period had expired in 1989, thus barring all of plaintiffs claims. Supreme Court disagreed and held that each statement of account that the bank sent to plaintiff carried its own one-year period, thereby sustaining the claims arising within one year prior to May 18, 1995. Agreeing with the bank, the Appellate Division modified Supreme Court’s order and dismissed all of plaintiffs claims. We granted plaintiff leave to appeal and now reverse and reinstate the order of Supreme Court.
 

 This case is governed by article 4 of the Uniform Commercial Code. In addressing the relationship between a payor bank and its customers, part 4 of article 4 imposes a series of duties and shifting burdens as to the risk of loss for forged or altered checks
 
 (see,
 
 UCC 4-401 — 4-408;
 
 see generally,
 
 2 White and Summers, Uniform Commercial Code §§ 19-6, 21-1 — 21-7 [Practitioner’s 4th ed]).
 

 
 *207
 
 The Uniform Commercial Code fastens strict liability on a bank that charges against its customer’s account any “item” that is not “properly payable”
 
 (see,
 
 UCC 4-401;
 
 see also, Woods v MONY Legacy Life Ins. Co.,
 
 84 NY2d 280, 283;
 
 Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.,
 
 74 NY2d 340, 345;
 
 Kosic v Marine Midland Bank, 76
 
 AD2d 89, 91,
 
 affd
 
 55 NY2d 621). A check bearing a forgery of the customer’s signature is an “item” not “properly payable” and therefore may not be charged against the customer’s account
 
 (see,
 
 UCC 3- 404 [1]; 4-104 [1] [g]; 4-401 [1];
 
 Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.,
 
 74 NY2d, at 345,
 
 supra).
 

 The Uniform Commercial Code goes on, however, to impose certain reciprocal duties on the customer, which limits the bank’s strict liability exposure. Pursuant to UCC 4-406 (1), a customer must (i) “exercise reasonable care and promptness to examine” statements of account and included items to discover his or her “unauthorized signature or any alteration on an item” and (ii) “notify the bank promptly after discovery thereof.” Under UCC 4-406 (2), a customer who fails to comply with these duties, with respect to an item appearing in a statement of account, is precluded from raising certain allegations against a bank.
 

 This preclusion, however, is not absolute. Even a customer failing in these duties may bring a claim against the bank if the customer can establish that the bank lacked
 
 ordinary care
 
 in paying the check
 
 (see,
 
 UCC 4-406 [3]). In this context, UCC 4- 406 (4) provides that a customer whose claim is not precluded by UCC 4-406 (2) has “one year from the time
 
 the statement
 
 and items are made available to the customer” for asserting claims against a bank for an unauthorized signature of the customer or an alteration to the face or back of a check
 
 (see,
 
 UCC 4-406 [4] [emphasis added]).
 

 In the case before us, the items purportedly forged or altered by the bookkeeper appear in successive statements of account over a seven-year period. Although the Uniform Commercial Code sets the one-year statutory limit to run from the time “the statement” becomes available to the customer, UCC 4-406 (4) does not state when the one-year period begins to run in situations where forged or altered items by the same wrongdoer appear in successive statements of account.
 

 Plaintiff argues that each successive statement of account carries its own one-year period. If so, plaintiff may still assert claims for forged or altered checks reported in statements made
 
 *208
 
 available to him between May 18, 1994 and May 18, 1995— assuming, of course, he can also establish that the bank failed to exercise ordinary care in paying the checks during that period
 
 (see,
 
 UCC 4-406 [3]).
 

 The bank, by contrast, argues that UCC 4-406 (4)’s one-year period begins to run when a customer receives the
 
 first
 
 statement of account containing an unauthorized signature of the customer or an altered item. Under this interpretation plaintiff would be barred from asserting claims against the bank for any of his bookkeeper’s forgeries or alterations, because plaintiff’s statements of account reflected these forgeries or alterations as early as 1988.
 

 The bank relies upon a portion of Official Comment 5 to UCC 4-406, which states that “there is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature.” This phrase, however, must be read in its broader context, which is to explain the difference between the time limit for reporting altered checks or forgeries of a customer’s own signature and the time limit for reporting unauthorized indorsements. The Comment emphasizes that it is far easier for customers to spot — and therefore more promptly report — alterations on their checks or forgeries of their own signatures, as opposed to unauthorized indorsements, which involve signatures of third parties. Accordingly, the period for reporting the former is one year, the latter, three (UCC 4-406 [4]).
 

 The bank also relies on Official Comment 3 to UCC 4-406, which states, in relevant part, that “one of the best ways to keep down losses in this type of situation is for the customer to promptly examine his statement and notify the bank of an unauthorized signature or alteration so that the bank will be alerted to stop paying further items.”
 

 Although this language aptly describes the importance of attentiveness generally, it does not support the bank’s argument as to when the one-year period commences. Comment 3 relates to UCC 4-406 (2), a subsection that applies when the bank has exercised ordinary care in paying the checks. Here, however, plaintiff’s claim is based on . the bank’s alleged failure to exercise ordinary care under UCC 4-406 (3) and (4). Indeed, a comparison of UCC 4-406 (2) and UCC 4-406 (4) provides the key to our determination. The 14-day period under UCC 4-406 (2) (b) runs from the point at which “the
 
 first
 
 item and statement was available to the customer” (emphasis added). By way
 
 *209
 
 of contrast, UCC 4-406 (4) conspicuously omits the word “first,” stating merely that the one-year period runs from “the statement and items.” We are satisfied that this distinction was legislatively willed and that each statement therefore carries its own one-year period.
 

 One of the Uniform Commercial Code’s basic purposes is to “make uniform the law among the various jurisdictions” (see, UCC 1-102 [2] [c]; see
 
 also, Woods v MONY Legacy Life Ins. Co.,
 
 84 NY2d, at 285,
 
 supra).
 
 In that context we note that our decision is in accord with other courts that have treated the issue (see,
 
 e.g., Sun ’n Sand v United Cal. Bank,
 
 21 Cal 3d 671, 691-692, 582 P2d 920, 934;
 
 Space Distribs. v Flagship Bank,
 
 402 So 2d 586, 589 [Fla Dist Ct of App];
 
 Neo-Tech Sys. v Provident Bank,
 
 43 Ohio Misc 31, 35-37, 335 NE2d 395, 400 [Ct of Common Pleas]).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court reinstated.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.