[No. B164083. Second Dist., Div. Eight. June 30, 2004.]

HUGHES ELECTRONICS CORPORATION et al., Plaintiffs and Respondents, v.
CITIBANK DELAWARE et al., Defendants and Appellants.

**COUNSEL**

Westrup, Klick & Associates, R. Duane Westrup, Rhonda Klick, Lawrence R. Cagney and Mark L. VanBuskirk for Defendants and Appellants.

Quinn Emanuel Urquhart Oliver & Hedges, Dale H. Oliver, Michael E. Williams and Michelle R. Fang for Plaintiffs and Respondents.

**OPINION**

**BOLAND, J.**—A New York bank and its California customer agreed that disputes arising out of their banking relationship would be resolved under New York law. The customer sued in California under New York law for causes of action arising in California after the bank refused to credit its account for payment on a check bearing a forged endorsement. Under New York law, a three-year statute of limitations governed the claims. However, New York's "borrowing statute" required that each cause of action must be timely under both New York law and the law of the jurisdiction in which the claim arose. The customer's claims, asserted more than two years after it learned of the forgery and of the bank's allegedly wrongful payment of the check, were timely under the New York statute of limitations, but time-barred under California law. The trial court enforced the parties' contractual choice of law provision, but refused to enforce the borrowing statute and precluded the bank from asserting a statute of limitations defense. The jury found infavor of and awarded damages to the customer. The bank appealed.

We hold that, where parties to a valid and enforceable contractual choice of law provision make an unqualified choice to govern the resolution of their disputes by the "laws" of a foreign jurisdiction, a trial court may not choose to enforce some but not all of the applicable laws of that jurisdiction. We also conclude this action is governed by a one-year statute of limitations. (Code Civ. Proc., § 340, subd. (c).) Consequently, unless the bank is equitably estopped from asserting a statute of limitations defense, an issue which has not been litigated, this action was time-barred when it was filed. Accordingly, we reverse the judgment and remand the matter for trial on the issue of estoppel.

## FACTUAL AND PROCEDURAL BACKGROUND

Respondent DIRECTV, Inc. is a wholly owned subsidiary of respondent Hughes Electronics Corporation. Hughes is a Delaware corporation and DIRECTV, Inc. is a California corporation. California is the principal place of business for each entity. Respondent Citibank Delaware is a Delaware corporation. Respondent Citibank NA is a Delaware corporation and its principal place of business is New York.

On May 15, 2001, Hughes and DIRECTV, Inc. (collectively DIRECTV) filed this action against Citibank Delaware, and Citibank NA (collectively Citibank). The facts are not in dispute.

DIRECTV and Citibank are parties to an integrated July 1995 Customer Agreement that "is governed by the laws of the State of New York . . . ."

In December 1998, DIRECTV wrote a check on its Citibank account for $439,281.60, and mailed the check to the payee, American Express. The check was stolen from the mail, American Express' endorsement was forged, and the check was cashed by the thief in January 1999. DIRECTV was aware of the forgery and that the American Express check had been cashed by April 15, 1999. Citibank refused to re-credit DIRECTV's account for the forged endorsement.

On May 15, 2001, DIRECTV filed this action alleging two causes of action against Citibank for violation of section 4-401 of the New York Uniform Commercial Code and for breach of contract. DIRECTV's contract claim incorporates the allegations related to and is specifically predicated on Citibank's alleged violation of New York Uniform Commercial Code section 4-401. The matter was tried in September 2003. By a pretrial ruling on an in limine motion, the trial court found that DIRECTV's claims were governed by the three-year statute of limitations of New York Civil Practice Law and

Rules (CPLR) 214(2),[1] rather than the one-year limitation period underr California Code of Civil Procedure section 340, subdivision (c),[2] as Citibank had urged. The trial court refused to enforce New York's borrowing statute, CPLR 202.[3]

Citibank was barred from presenting a statute of limitations defense, and its proposed jury instructions on that point were rejected. The action was tried and judgment subsequently was entered on a unanimous verdict awarding damages of $439,281.60, plus prejudgment interest, to DIRECTV. Citibank appeals.

## DISCUSSION

This appeal raises the question of whether a choice of law provision in the parties' written agreement, which states the agreement are governed by New York "laws," requires application of New York's statute of limitations to the claims, or whether the parties' agreement also encompasses application of New York's "borrowing" statute by virtue of which California's shorter statute of limitations would bar this action. The interpretation of a choice of law clause on undisputed facts presents a purely legal question which we review de novo. (*Hambrecht & Quist Venture Partners v. American Medical Internation., Inc.* (1995) 38 Cal.App.4th 1532, 1539, fn. 4 [46 Cal.Rptr.2d 33] (*Hambrecht*); *American Home Assurance Co. v. Hagadorn* (1996) 48 Cal.App.4th 1898, 1907, fn. 6 [56 Cal.Rptr.2d 536].)

Citibank insists the trial court correctly upheld the parties' agreement to be bound by New York law, but erred in refusing to apply New York's borrowing statute. DIRECTV argues the court correctly found, based on the parties' choice of law provision, that New York's three-year statute of limitations, CPLR 214(2), applied to its claims. Citibank has the better argument. By choosing to be bound by New York "law," the parties agreed to be bound by the entire body of that state's laws, including its borrowing statute.

---

[1] New York CPLR 214(2): "Actions to be commenced within three years: . . . [¶] [A]n action to recover upon a liability, penalty or forfeiture created or imposed by statute . . . ."

[2] California Code of Civil Procedure section 340: "Within one year: [¶] . . . [¶] (c) An action . . . by a depositor against a bank for the payment of a forged or raised check, or a check that bears a forged or unauthorized endorsement . . . ." Code of Civil Procedure section 340, subdivision (c) was redesignated in 2002 as section 340, subdivision (c), and will be hereafter referred to as section 340(c).

[3] New York CPLR 202: "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

1. *The choice of law provision is enforceable.*

■ When California is the forum, disputes arising out of contractual choice of law provisions are resolved in accordance with the decision in *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*). In *Nedlloyd*, the Supreme Court concluded California courts must apply the principles articulated in the Restatement Second of Conflict of Laws (Restatement) section 187, which strongly favor enforcement of choice of law provisions, so long as those provisions are freely and voluntarily agreed upon. (*Nedlloyd, supra,* 3 Cal.4th at pp. 464–465.) The proper analytical approach, under *Nedlloyd* and the Restatement, is to determine whether (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) any other reasonable basis exists for the parties' choice of law. If either test is met, the choice of law provision will be enforced unless the chosen state's law is contrary to a fundamental public policy of California. (*Id.* at p. 466; Restatement § 187, subd. (2).) The requirements for enforcing the choice of law provision are satisfied here.

First, Citibank's principal place of business is in New York. This fact alone is sufficient to establish a "substantial relationship" between New York and the parties as well as a "reasonable basis" for a contractual provision requiring application of New York law. " 'If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice.' [Citation.]" (*Nedlloyd, supra,* 3 Cal.4th at p. 467; *Hambrecht, supra,* 38 Cal.App.4th at p. 1547.)

Second, neither party contends, nor do we conclude, that any fundamental public policy of California is offended by application of New York law. Indeed, both states have adopted the provisions of the national model Uniform Commercial Code (UCC) which provides the statutory basis for the claims at issue. (Compare 23B pt. 1 West's Cal. U. Com. Code (2002) § 4401, subd. (a), and *id.,* foll. § 4401, Cal. Code Com., par. 2, p. 153 [bank pays forged check at its peril and cannot charge depositor's account unless bank can show negligence on part of customer and its own freedom from negligence], with N.Y.U. Com. Code § 4-401(1); *Monreal v. Fleet Bank* (2000) 95 N.Y.2d 204 [713 N.Y.S.2d 301, 302–303, 735 N.E.2d 880, 881–882] [Under New York's version of UCC, forged endorsement is wholly inoperative and bank must recredit drawer's account, or be strictly liable]; *Royal Ins. Co. of America v. Citibank, N.A.* (N.Y. App. Div. 2003) 306 A.D.2d 158 [763 N.Y.S.2d 539, 690 N.E.2d 1249] [same].) Accordingly, this case presents no impediment to enforcement of the parties' choice of law provision.

*2. New York's borrowing statute must be enforced.*

    *a. New York law supports enforcement of CPLR 202.*

The parties' written agreement simply states that it "is governed by the laws of the state of New York . . . ." The agreement does not refer to nor attempt to distinguish or exclude New York's substantive laws from its procedural provisions. The question posed is whether the trial court erred in enforcing certain provisions of New York law—the law governing the substantive claims and the procedural law establishing a three-year statute of limitations—but refusing to enforce another—the borrowing statute of that same jurisdiction.

    ■ There can be no question that, had this case been adjudicated in New York, New York law would require application of that state's borrowing statute and, in turn, California's shorter statute of limitations.[4] In an action brought in New York by a nonresident plaintiff on a cause of action accruing outside that state, CPLR 202 requires that the applicable limitation period be the shorter of the statutes of limitations of New York or the state where the cause of action accrued. (*Insurance Co. of N.A. v. ABB Power Gen.* (1997) 91 N.Y.2d 180 [668 N.Y.S.2d 143, 146–147, 690 N.E.2d 1249, 1252–1253] (*Insurance Co. of N.A.*); *Dugan v. Schering Corp.* (1995) 86 N.Y.2d 857 [635 N.Y.S.2d 164, 165, 658 N.E.2d 1037, 1038].)[5] The only exception to this rule occurs when the cause of action accrues in favor of a New York resident. (*Insurance Co. of N.A., supra,* 690 N.E.2d at p. 1253.)

The question here is whether a different result should obtain simply because DIRECTV chose to bring this action in California. We think not.

    *b. California law also supports enforcement of CPLR 202.*

Our analysis is informed by the decision in *Hambrecht, supra,* 38 Cal.App.4th 1532, an action filed in California to rescind a contract for stock purchase agreements. The parties' contract provided that it " 'shall be governed by and construed in accordance with the laws of the State of Delaware.' " (*Id.* at p. 1538.) Defendant successfully demurred on the ground the plaintiffs' claims—which would have been timely under California's four-year statute of limitations for breach of a written contract (Code Civ. Proc.,

---

[4] This action could have been tried in New York. DIRECTV agreed to submit disputes related to the customer agreement "to the non-exclusive jurisdiction of any New York State or federal court sitting in New York City . . . ."

[5] Under New York law, in a case such as this, in which purely economic injury is at issue, a cause of action accrues where the plaintiff resides and sustains the economic impact of the loss—in this case, California. (*Global Financial Corp. v. Triarc Corp.* (1999) 93 N.Y.2d 525 [693 N.Y.S.2d 479, 481, 715 N.E.2d 482, 485].)

§ 337, subd. (1))—were barred by Delaware's three-year statute of limitations. (*Hambrecht, supra,* 38 Cal.App.4th at p. 1549.) On appeal, plaintiffs argued the trial court erred in construing the choice of law provision to incorporate Delaware's statute of limitations.[6]

Our colleagues in Division One of this District concluded otherwise. Relying on the Restatement, decisions by the United States and California Supreme Courts, and several California appellate cases, the court found the agreement's unqualified reference to the "laws" of Delaware referred to all of that jurisdiction's statutory laws, including its statutes of limitation. (*Hambrecht, supra,* at pp. 1540, 1542; see also Restatement, § 187(3) ["In the absence of a contrary indication of intention, the reference [in a choice of law provision] is to the local law of the [chosen] state."]; Restatement, § 4, subd. (1) [defining "local laws" as the chosen state's "body of standards, principles, and rules, exclusive of its rules of Conflict of Laws, which the courts of that state apply in the decision of controversies brought before them."]; *U.S. Fidelity & G. Co v. Guenther* (1930) 281 U.S. 34, 37 [74 L.Ed. 683, 50 S.Ct. 165] ["Law" is defined as "rules of action or conduct duly prescribed by controlling authority, and having binding legal force"]; *Miller v. Dunn* (1887) 72 Cal. 462, 466 [14 P. 27] [The term "law" includes "the whole body or system of rules of conduct, including the decisions of courts as well as legislative acts . . . ."]; *Henderson v. Superior Court* (1978) 77 Cal.App.3d 583, 592–593 [142 Cal.Rptr. 478] [choice of Florida "law" in contract includes that state's statutes of limitation]; *American Bank of Commerce v. Corondoni* (1985) 169 Cal.App.3d 368, 371–373 [215 Cal.Rptr. 331] [notwithstanding distinctions between "substantive" and "procedural" laws (the latter generally including statute of limitations), both categories must be considered part of a jurisdiction's "law."]; *Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790, 793 [181 Cal.Rptr. 340] (*Ashland*) [acknowledging, in dicta, that the parties' choice of law clause, by which contract was to be " 'governed by and construed in accordance with the laws of . . . Kentucky,' " incorporated that state's statutes of limitations.][7].) The court in *Hambrecht* expressly rejected the argument DIRECTV implicitly urges us to accept, viz., when faced with an unqualified choice of

---

[6] Application of Delaware's borrowing statute was not an issue in *Hambrecht* because that state's borrowing statute requires application of another state's limitations period only if it is shorter than Delaware's. (Del. Code Ann. tit. 10, § 8121.)

[7] In *Ashland*, the parties agreed their contract would be governed by Kentucky laws. Notwithstanding that agreement, the court found that enforcement of the choice of law provision violated California's interest in avoiding prosecution of stale claims—Kentucky's statute of limitations for the claim at issue was 15 years—and applied California's four-year statute of limitations. (*Ashland, supra,* 129 Cal.App.3d at pp. 794–795.) This holding is consistent with the principles articulated in *Nedlloyd,* namely that a California court will enforce a choice of law provision unless it is contrary to a fundamental public policy of this state.

law contractual provision, a court is free to pick and choose which of a chosen jurisdiction's laws to apply. (*Hambrecht, supra,* 38 Cal.App.4th at p. 1542.)

The conclusion in *Hambrecht* finds support in the holding of *Ginise v. Zaharia* (1964) 224 Cal.App.2d 153 [36 Cal.Rptr. 406]. In *Ginise,* a case involving the applicability of California's borrowing statute (Code Civ. Proc., § 361), the court addressed the issue of whether a California action filed on December 7, 1960 (but not served until April 1961), for personal injuries suffered on December 7, 1959, in Connecticut, was timely "commenced." The action would have been time-barred in Connecticut (where timeliness is determined by the date of service of process), but was timely under California law, by which an action is deemed "commenced" on the date the complaint is filed. The court concluded that California courts were required to apply a foreign state's rule regarding the commencement of an action only if that state had incorporated that rule into its statute of limitations. (*Id.* at p. 158.) Because Connecticut had not codified its procedural rule, the timeliness of the action was determined under California law. (*Ibid.*)

■ Applied here, the reasoning of *Hambrecht* and *Ginise* requires that CPLR 202, which is inextricably intertwined with and part of same division of statutes as New York's statutes of limitation, is viewed as an integral part of that state's statutory law. A court is not free to read into an agreement restrictions which the parties to the agreement chose not to incorporate into it. In other words, if a California court is bound, as here, by an enforceable contractual choice of law provision to apply a foreign state's law, including that state's statute of limitations, it must give equal effect to the foreign state's borrowing statute.

    c.   *The record does not support DIRECTV's assertion that either Citibank's intent in drafting the customer agreement, or the parties' course of dealing, evidence an intention to be bound by New York's statute of limitations.*

DIRECTV insists the trial court's conclusion was correct because it is clear that, when the parties entered into the written agreement, they intended that New York's three-year statute of limitations would govern disputes concerning that contract. This argument is premised on testimony by Citibank's senior counsel, William Klimashousky, who stated that, in drafting the agreement, he explicitly intended New York's Uniform Commercial Code to govern any disputes with DIRECTV.

Klimashousky's testimony, however, does not advance DIRECTV's position. Both New York's three-year statute of limitations and its borrowing

statute are contained within that state's codified Civil Practice Law and Rules, not its Uniform Commercial Code. New York's Commercial Code does not contain a statute of limitations governing the claims at issue.[8] On the contrary, as DIRECTV concedes, New York's Uniform Commercial Code section 4-406, on which its argument that a three-year limitations period applies is based, is a notice or issue preclusion statute, not a statute of limitations. (*Weiner v. Sprint Mortgage Bankers Corp.* (N.Y. App. Div. 1997) 235 A.D.2d 472 [652 N.Y.S.2d 629, 631] [Section 4-406 "is not a Statute of Limitations 'fixing the time within which an action may be brought.' . . . it is a 'rule of substantive law' which creates a 'statutory prerequisite of notice.' " [Citations omitted.].) Thus, Klimashousky's testimony is not probative of an intention on the part of either party that CPLR 214(2), a statute not contained within New York's Uniform Commercial Code, would apply. Indeed, other testimony by Klimashousky evidences a contrary intention. Specifically, when asked whether by including the choice of law provision in the agreement he "intended to mean all the laws of New York," Klimashousky said "yes." He also said "yes" when asked whether he had specifically intended to "include[] the law of New York relating to choice of law." The record therefore does not support DIRECTV's contention that, at the time the agreement was drafted or executed, either party intended to preclude application of CPLR 202.

■ DIRECTV's argument that the parties' "course of dealing" evidences a joint intention to be bound only by New York's statute of limitations fares no better. First, the letter from Citibank on which DIRECTV relies refers to the "absolute notice" provision of section 4-406. As noted above, the notice provision is not a statute of limitations, and cannot evidence an intention to rely on a particular statute of limitations. Second, the single document on which DIRECTV relies was not sent before or contemporaneous with the drafting of the parties' agreement. Rather, it was transmitted in January 2002, three years after the forged endorsement at issue, and refers to a different transaction. As such, it has no probative value. Moreover, it is settled law in New York that a single instance cannot establish a course of dealing. (*GMAC v. Clifton-Fine Cent. School Dist.* (1995) 85 N.Y.2d 232, 623 N.Y.S.2d 821, 823 [647 N.E.2d 1329, 1331]; *Rotuba Extruders, Inc. v. Ceppos* (1978) 46 N.Y.2d 223 [413 N.Y.S.2d 141, 144–145, 385 N.E.2d 1068, 1071–1072]; see also 4 White & Summers, Uniform Commercial Code (4th ed. 2001) § 3-3 ["a single occasion cannot constitute a *sequence* and therefore cannot be a course of dealing"].)[9]

---

[8] As discussed in detail below, the UCC adopted a statute of limitations in 1992 for actions brought under article 4 (UCC § 4-111). However, New York has not adopted UCC section 4-111.

[9] Similar flaws invalidate DIRECTV's attempt to rely on a September 2002 conversation between representatives of Citibank and DIRECTV. This conversation took place long after the genesis of the claims at issue here, and DIRECTV has made no showing that either participant in that conversation had a role in drafting Citibank's customer agreement.

### d. *Enforcement of CPLR 202 advances the purposes of the statute.*

DIRECTV contends CPLR 202 is no more than a procedural rule intended to discourage forum shopping by deterring litigants from bringing an action in New York in order to take advantage of longer statutes of limitation. DIRECTV insists the purpose of CPLR 202 is not advanced where, as here, a California resident sues in California courts on a cause of action which arose in this state. In its view, the trial court correctly refused to enforce CPLR 202 because it was not forum-shopping when it filed the California action.

DIRECTV's position finds some support in the authorities on which it relies. In *Antone v. General Motors Corp.* (1984) 64 N.Y.2d 20 [484 N.Y.S.2d 514, 473 N.E.2d 742], the court stated that "[t]he primary purpose of CPLR 202", which was enacted in 1902, "is to prevent forum shopping by a nonresident seeking to take advantage of a more favorable Statute of Limitations in New York." (473 N.E.2d at p. 745; see also *Van Slyke v. Worthington* (N.J.Super.Ct. Law Div. 1992) 265 N.J. Super. 603, 616 [628 A.2d 386, 392] [New York's borrowing statute is merely a "rule of procedure" and only the state's substantive law applies to dispute. Moreover, since the purpose of CPLR 202 is to "protect nonresident forum shopping in New York, it would be improper to apply the statute to a case not brought in a New York court."]; *Eastman Kodak Company v. Arel, Inc.* (E.D.Mo. 1995) 873 F.Supp. 227, 228 [same; relying on *Van Slyke*].) No doubt CPLR 202 is intended to prevent forum shopping.

However, in 1999, New York's highest court definitively rejected the proposition that prevention of forum shopping is the sole purpose served by section 202. In response to a question certified by the Second Circuit Court of Appeals, the New York Court of Appeals held that, in addition to deterring forum shopping, CPLR 202 advances the "equally important purpose" of adding clarity to the law and ensuring its uniform application to litigants. (*Insurance Co. of N.A., supra,* 690 N.E.2d at p. 1252.)[10] Clarity and

---

[10] *Insurance Co. of N.A* involved a dispute between two companies, neither of which was a resident of New York, over a contract to design and build a power generation plant in California. The contract required the arbitration of all disputes in New York, under "the laws of New York." (*Insurance Co. of N.A., supra,* 690 N.E.2d at p. 1250.) The plant broke down, plaintiffs suffered financial losses and filed suit in New York to compel arbitration. Defendants removed the action to federal district court. Defendants argued the contract claim was time-barred by California's four-year statute of limitations; plaintiffs asserted the action was governed by New York's six year limitations period for claims on written contracts. (*Id.* at pp. 1249–1250.)

The New York Court of Appeals held that New York's borrowing statute "[r]equires that a court, when presented with a cause of action accruing outside of New York, should apply the limitation period of the foreign jurisdiction if it bars the claim. Only in cases in which the cause of action accrues in favor of a New York resident is this rule rendered inapplicable."(*Insurance Co. of*

uniformity is achieved if, in all cases brought by nonresidents on causes of action accruing in jurisdictions other than New York, the court "borrows" the foreign jurisdiction's limitations period if it is shorter than New York's. (*Id.* at pp. 1252–1253; see also *Global Financial Corp. v. Triarc Corp., supra,* 715 N.E.2d at p. 483 [CPLR 202 requires New York court to borrow other state's shorter statute of limitations if nonresident's claim accrues outside New York].)

■ DIRECTV argues that the goal of achieving clarity and uniform application of the law is disserved by applying another state's statute of limitations to causes of action governed by New York law, rather than simply and solely looking to that state's limitation period. A certain logic supports this position. In multistate transactions, parties to a dispute likely to lead to litigation need to determine first where the claim accrued. If the event occurred outside New York and in a jurisdiction in which the statute of limitations is shorter than New York's, a plaintiff needs to take stock of that fact and proceed accordingly. Thus, it is true a party to a contract may be put to the task of consulting more than one set of statutes to ensure its interests are protected. However, that fact alone does not engender the "complete lack of certainty as to what statute of limitations would apply," DIRECTV postulates, nor does it defeat the goal of consistency and clarity. It simply means that a plaintiff—or more likely, its attorney—must take account of the statute of limitations in the jurisdiction in which a claim accrues. Presumably, in cases such as this in which the claims accrued in the state where the plaintiff resides and maintains its business operations, that law will be familiar or, at least, readily ascertainable.[11] The operation of CPLR 202 is not complex. In a case brought by a nonresident on a claim arising outside the state but governed by New York law, the court simply applies the shorter of the two statutes of limitation.

■ New York's highest court has decisively construed CPLR 202 and determined that the application of that state's borrowing statute serves equally compelling state interests of discouraging forum shopping and achieving clarity and uniform application of New York law. In construing another state's statutory law, a definitive construction of that statute by the state's highest court is entitled to great deference.[12] (*Gurley v. Rhoden* (1975)

---

*N.A., supra,* 690 N.E. 2d at pp. 1252–1253.) Moreover, forum shopping was not an issue in *Insurance Co. of N.A.* The parties agreed to arbitrate their disputes under New York law and established New York as the exclusive venue for such arbitration. (*Id.* at p. 1250.)

[11] Application of this rule provides no less consistency in the case of personal injuries. Under New York law, a personal injury cause of action accrues in the jurisdiction in which the plaintiff suffers the injury. (*Martin v. Julius Dierck Equipment Co.* (1978) 43 N.Y.2d 583 [403 N.Y.S.2d 185, 187, 374 N.E.2d 97, 99]; *Bennett v. Hannelore Enterprises, Ltd.* (D.C.N.Y. 2003) 296 F.Supp.2d 406, 411.)

[12] The fact that CPLR 202 governs the "procedures" that attach to a given claim or action is of no import. Despite their procedural operation, the limitation provisions of New York's

421 U.S. 200, 208 [44 L.Ed.2d 110, 95 S.Ct. 1605] [observing that "a State's highest court is the final judicial arbiter of the meaning of state statutes," such that " '[w]hen a state court has made its own definitive determination [of a statute] . . . this finding [has] great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive.' [Citation.]"].) Therefore, we must conclude that Citibank and DIRECTV, who made the unqualified choice to govern their business transactions by the "laws of New York," were aware of and impliedly intended to be bound by that state's borrowing statute which, in its largely unchanged form, has been part of New York's laws and on its "books" for over a century. (See *Global Financial Corp. v. Triarc Corp.* (1999) 93 N.Y.2d 525 [693 N.Y.S.2d 479, 481, 715 N.E.2d 482, 484].)

By choosing selectively to enforce only parts of New York law to these claims, the trial court gave DIRECTV the benefit of a longer statute of limitations than it would have received in New York. In effect, DIRECTV engaged in the sort of forum shopping all borrowing statutes are intended to discourage; it filed in California and gambled that the trial court would agree not to enforce all the applicable provisions of New York law. Under *Insurance Company of N.A.*, the New York courts unquestionably would apply the California statute of limitations to the claims at issue. No different result should obtain simply because DIRECTV chose to file in its home state. DIRECTV's agreement to be bound by New York law means it cannot pick and choose among the laws by which it is bound. It is governed by all of that state's laws applicable to this dispute, including the 102-year-old statute at issue.

3. *Code of Civil Procedure section 340(c), not California Uniform Commercial Code section 4111, is the applicable statute of limitations.*

DIRECTV asserts that, even if a California statute of limitations does govern, this action is timely because California Uniform Commercial Code section 4111 (section 4111) is the applicable statute of limitations. Under that statute, "[a]n action to enforce an obligation, duty, or right arising under [division 4 of the California Uniform Commercial Code]" must be "commenced within three years after the cause of action accrues." Citibank, on the other hand, contends the action is governed by Code of Civil Procedure section 340(c), which imposes a one-year statute of limitations on "[a]n action . . . by a depositor against a bank for the payment of . . . a check that bears a forged . . . endorsement. . . ." Citibank is correct.

---

CPLR, of which CPLR 202 is a part, are considered part of New York's substantive law. (*Cerio v. Charles Plumbing & Heating, Inc.* (N.Y. App. Div. 1982) 87 A.D.2d 972 [450 N.Y.S.2d 90, 91].) We have no cause to question that determination.

a. *The enactment of California Uniform Commercial Code section 4111 was not intended to abrogate Code of Civil Procedure section 340(c).*

Neither party disputes—nor could it—that, prior to 1993, California applied section 340(c)'s one-year limitation period to any action against a bank based on a forged endorsement. That limitations period operated in conjunction with the version of section 4406 adopted in 1963, which required a customer to "discover and report . . . any unauthorized indorsement" to its bank within one year. (See Cal. U. Com. Code, former § 4406, subd. (4), added by Stats. 1963, ch. 819, § 1, p. 1929.)[13] However, by amendments enacted in 1992 and effective in 1993, California made a number of changes to portions of its Uniform Commercial Code. Among those changes was the adoption of the UCC's three-year statute of limitations.

DIRECTV relies on the official comments to UCC section 4-406 to support its argument that the changes "should be read together to establish a new, three-year limitations period for claims based on a fraudulently endorsed check." The UCC Official Comments state: "Section 4-406 imposes no duty on a customer to discover a forged indorsement. Section 4-111 sets out a statute of limitations allowing a customer a three-year period to seek a credit to an account improperly charged by payment of an item bearing an unauthorized indorsement." (See 23B pt. 1 West's Ann. Cal. U. Com. Code, *supra*, foll. § 4406, Official Reasons for 1990 UCC Changes, p. 192; *id.*, and UCC Com., ¶ 5, p. 191.) The UCC rule permitting customers the longer three-year period for reporting forged endorsements is and since its inception has been predicated on the assumption that a customer is "more likely promptly to discover a forgery of his own signature or an alteration than a forged endorsement." (*Id.*, Cal. U. Com. Code Com. 8, p. 188; see also *id.*, UCC § 4-406 Off. Com. No. 5, p. 191; UCC § 4-406, Rev. Off. Com. No. 5.)

However, in the 1960's, when section 4406 was first adopted, California considered and rejected the UCC rationale for applying a three-year limitation period to actions involving forged endorsements in favor of the existing one-year statute of limitations of section 340(c). The official commentary explains this state's decision to deviate from the model code:

---

[13] The issues involved in this appeal deal with the interpretation and legislative intent with regard to aspects of the California Uniform Commercial Code and section 340(c). We determine the legislative history and statutory amendments are both relevant and appropriate for judicial notice, and grant Citibank's request for judicial notice. (See *Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 950, fn. 2 [98 Cal.Rptr.2d 671, 4 P.3d 928]; *West Shield Investigations & Security Consultants v. Superior Court* (2000) 82 Cal.App.4th 935, 946, fn. 4 [98 Cal.Rptr.2d 612].)

However, we reject DIRECTV's request for judicial notice. Neither Citibank's petition for writ of mandate nor our denial of that petition is relevant to the issues before us. As a general matter, judicial notice is not taken of matters irrelevant to the dispositive points on appeal. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

"The purpose of [UCC section 4-406(4)] is to set an absolute time limit on the right of a customer to make a claim against the payor bank, without regard to the care or lack of care of either the customer or the bank. In California, this matter is covered at present by CCP § 340(3) which sets a one-year limitation on actions by a depositor against a bank for the payment of a . . . check bearing forged or unauthorized indorsements."

" 'The one-year limitation in CCP § 340(3) applies both to forged indorsements and to cases where the drawer's signature is forged. This subsection [the Official UCC Text] provides a longer period of limitation for the discovery of a forged indorsement (three years) than for a forged signature of a drawer (one year), on the ground that the drawer is less likely to discover a forged indorsement. The State Bar Committee proposes retaining the present one-year limitation for both cases. There is no indication that this rule has been unsatisfactory in the past, and it is recommended that the State Bar Committee proposal on this point be adopted. . . . .' (Sixth Progress Report to the Legislature by Senate Fact Finding Committee on the Judiciary, (1959–1961) Part 1, The Uniform Commercial Code, p. 489." (23B pt. 1 West's Ann. Cal. U. Com. Code, *supra*, foll. § 4406, Cal. Code. Com., p. 188.).)

It is clear that, when section 4406 was first adopted, the Legislature intended actions such as this to remain governed by section 340(c)'s one-year limitation period. We discern no indication that the Legislature's intention changed in 1992 when California enacted its Uniform Commercial Code section 4111, ostensibly to govern some of the same actions covered by section 340(c). We believe the Legislature's implicit intention that the one-year limitation period of section 340(c) should continue to govern actions on forged endorsements is best ascertained from changes to section 4406 and the changes in 2002 to section 340(c) itself.

In 1992, consistent with changes made to the UCC itself, the Legislature eliminated from section 4406 the prior requirement that depositors "discover and report" unauthorized endorsements within one year. (Compare former § 4406, subd. (4), added by Stats., 1963, ch. 819, § 1, p. 1929, with § 4406, subd. (f).) At the same time, California adopted the UCC's new three-year statute of limitations of section 4111. DIRECTV insists the occurrence of these two events is evidence of the Legislature's implicit intention to apply the new, longer statute of limitations of section 4111 to all actions brought under division 4, including those involving forged endorsements.[14]

---

[14] Most of the 1992 changes to division 4 were intended largely to conform that division to extensive revisions in division 3, which deals with negotiable instruments. (See 23A pt. 1 West's Ann. Cal. U. Com. Code (2002) foll. § 1201, Com. Cal. U. Com. Code, p. 92.) Section 4111 conforms to division 3's three-year statute of limitations for breach of warranty and enforcement of other rights and obligations arising under article 3. (23B pt. 1, West's Ann. Cal. U. Com. Code, *supra*, UCC Com. foll. § 4111, p. 60.)

To support its argument, DIRECTV points to the official UCC commentary reprinted at 23B pt. 1, West's Annotated California Uniform Commercial Code following section 4406, which address the "delet[ion of] the reference to a three-year period to discover an unauthorized indorsement" in former section 4406, subdivision (4). However, DIRECTV neglects to mention that California did not adopt the portion of former UCC section 4406 to which those comments relate. Given that fact, the inclusion of this commentary to section 4406 is puzzling. Nevertheless, considering the extensive commentary devoted to California's rejection of the rationale underlying the UCC three-year rule in 1963, and the state's clear intention to adhere to a one-year limitation period (commentary which was purposefully included at the time of the 1992 amendments), we cannot conclude the Legislature intended to contradict its own explicit conclusions without so much as a word as to why such a reversal was made.

The more logical and consistent conclusion is that the inclusion of the 1963 commentary in the 1992 version of section 4406 is an implicit indication of the Legislature's intention to adhere to the earlier rule rejecting the three-year limitations period. This conclusion is consistent with long-standing rules of statutory interpretation. Section 340(c), "[a] statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering the general spectrum [section 4111] unless the later statute expressly contradicts the original act or unless that construction is absolutely necessary in order that all of the words of the later statute have any meaning at all." (Singer, Sutherland Statutory Construction (6th ed. 2004) § 51:5; see also *Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310–312 [99 Cal.Rptr.2d 792, 6 P.3d 713].) Typically, when a Legislature models a statute after a uniform act, but does not adopt the particular language of that act, courts conclude the deviation was deliberate and that the policy of the uniform act was rejected. (Sutherland Statutory Construction, § 52:5.)

■ The legislative amendments to section 340(c) enacted in 2002 also are consistent with our conclusion. In fall 2002, in response to problems experienced by victims of the terrorist activities of September 11, 2001, the statute of limitations for personal injury and wrongful death actions was extended from one to two years, and recodified as Code of Civil Procedure section 335.1.[15] With the exception of minor stylistic changes (changing numeric paragraph references to alphabetic ones), no changes were effected to section 340(c). The law shuns repeal by implication and, if possible, courts must maintain the integrity of both statutes. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 569 [71 Cal.Rptr.2d 731, 950 P.2d 1086].) Consistent with this mandate, we conclude the Legislature's changes to certain statutes of limitations, coupled with a complete absence of

---

[15] "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another." (Code Civ. Proc., § 335.1.)

change to others, evinces a continuing intention to adhere to its earlier express intention to apply the one-year limitation period of section 340(c) to actions such as this, rather than the three-year period of section 4111 applicable to most actions under Division Four of the Commercial Code.[16]

    b. *To the extent possible, well-established principles of statutory construction require us to harmonize section 4111 and 340(c), in a manner that gives effect to both statutes and favors the specific over the more general.*

    ■ The law abhors repeal by implication. (*Stop Youth Addiction, Inc., supra,* 17 Cal.4th at p. 569.) Therefore, to the extent possible, we are obligated to construe the two seemingly inconsistent provisions at issue in a manner that gives effect to both. (Code Civ. Proc., § 1858 ["In the construction of a statute . . . , the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein . . . ; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."] ■ To that end, we conclude section 4111 is a "catch-all" statute of limitations which governs the entire ambit of general obligations, rights and duties which arise under division 4 of the California Uniform Commercial Code. That division encompasses and defines the parties' rights with respect to myriad aspects of a depositor's relationship with its bank, as well as relations between banks themselves with respect to deposits and collections. As such, section 4111 applies to broad categories of claims and actions, and establishes a uniform statute of limitations where none clearly existed. (See *Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1124–1125 [78 Cal.Rptr.2d 478] [The enactment of section 4111 establishes the time within which an action to enforce an obligation, duty or right under division 4 of the Uniform Commercial Code—Bank Deposits and Collections must be filed].)[17]

---

[16] The Fourth District Court of Appeal recently reached the same conclusion for slightly different reasons in *Chatsky & Associates v. Superior Court* (2004) 117 Cal.App.4th 873 [12 Cal.Rptr.3d 154], a decision published after oral argument in this matter. In that action, several depositors sued their bank for conversion and breach of contract for payment of forged checks. The trial court summarily adjudicated the matter in favor of the bank, finding the action time-barred by section 340(c). The Court of Appeal agreed. It rejected the depositors' argument that, by enacting section 4111, a general statute addressed to the same subject matter as section 340(c), and seemingly irreconcilable with that earlier-enacted statute, the Legislature intended, by implication, to repeal the more specific provisions of section 340(c). (117 Cal.App.4th at pp. 878–880.)

[17] *Fineman* is the only published California case to address section 4111's applicability to claims brought under 4401. *Fineman* is not a forged endorsement case. Rather, it involved a bank's unauthorized payment of checks which required two signatures, but which were presented with only one. The applicability of 340(c) was not raised, nor would that statute have applied. The check at issue was not "forged" or "raised," and did not bear a "forged or unauthorized endorsement." In addition, there was no need for the court to discuss the

■ Moreover, a specific statutory provision relating to a particular subject controls over a more general provision. That rule obtains even though the general provision standing alone is sufficiently broad to include the subject to which the specific statute relates. (Civ. Code, § 3534.) "In the construction of a statute the intention of the Legislature . . . is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." (Code Civ. Proc., § 1859.) "[I]t is . . . settled that when a special and a general statute are in conflict, the former controls. (Code Civ. Proc., § 1859.) ' "[T]he special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." ' [Citations.]" (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687]; see also *People v. Breyer* (1934) 139 Cal.App. 547, 550 [34 P.2d 1065] ["It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. . . . [W]here the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication."].)[18]

■ It would be difficult to find a statute more precisely tailored to the specific circumstances at issue than section 340(c). Section 4111, the broad and general statute of limitations for banking actions, lies at the far end of the specificity spectrum. Under these circumstances, we conclude the Legislature intended section 340(c), the special, narrow and specific statute, to control over section 4111, the more general enactment. (See *Chatsky & Associates, supra,* 117 Cal.App.4th at pp. 878–879 [rejecting argument that enactment of

---

applicability of section 340(c)'s shorter limitation period; the three-year period under section 4111 had already expired.

■ In cases more similar to this, courts have consistently held that an action against a bank on a forged check is governed by one-year statute of limitations of section 340(c). (*Chatsky & Associates, supra,* 117 Cal.App.4th at p. 880; *Mac v. Bank of America* (1999) 76 Cal.App.4th 562, 567 [90 Cal.Rptr.2d 476]; see also *Union Tool Co. v. Farmers etc. Nat. Bk.* (1923) 192 Cal. 40, 52–53 [218 P. 424] [statute of limitations of section 340(c) begins to run from time alleged forged or raised check is delivered to depositor]; *Roy Supply, Inc. v. Wells Fargo Bank* (1995) 39 Cal.App.4th 1051, 1065 [46 Cal.Rptr.2d 309] [section 340(c) provides "a distinct and narrow exception to the general rules of limitation applicable to actions against a bank."].)

[18] Indeed, the interpretation urged by DIRECTV would render entire portions of section 340(c) "meaningless surplusage." Such a result would violate the canon that a court must avoid a construction of a statute which would render some words meaningless and mere surplusage. (*People v. Cruz* (1996) 13 Cal.4th 764, 782 [55 Cal.Rptr.2d 117, 919 P.2d 731]; *Woosley v. State of California* (1992) 3 Cal.4th 758, 775–776 [13 Cal.Rptr.2d 30, 838 P.2d 758].) "Whenever possible, we must give effect to every word in a statute and avoid a construction making a statutory term surplusage or meaningless." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155].)

section 4111 evinced the Legislature's intention to repeal section 340(c) because the two structures can exist in harmony]; *Roy Supply, Inc., supra,* 39 Cal.App.4th at p. 1065 [concluding that section 340(c) "provide[s] a distinct and narrow exception to the general rules of limitation applicable to actions against a bank."]; *Mac, supra,* 76 Cal.App.4th at p. 565 [statute of limitations applicable to action against bank on forged check is section 340(c)].)

For these reasons, we conclude the trial court erred when it determined that New York law governed this action, but refused to enforce that state's borrowing statute and apply the California statute of limitations. We also conclude the one-year limitation of Code of Civil Procedure section 340(c) is the applicable California statute of limitations. Accordingly, unless Citibank's reliance on a statute of limitations defense is, for some reason, inequitable, this matter, brought well after the expiration of the one-year statute of limitations, is and since its filing has been time-barred.

With respect to the issue of estoppel, DIRECTV insists it was prepared to present evidence at trial that Citibank should be estopped from asserting the one-year statute of limitations as a bar to this action. However, that presentation was never made, rendered moot by the trial court's application of New York's three-year statute of limitations. In the event we find the action is governed by California's one-year statute of limitations, DIRECTV requests we remand the matter for a determination as to whether Citibank is equitably estopped from asserting the statute of limitations defense to its Commercial Code claim. We agree a limited remand is appropriate. By virtue of the court's erroneous pretrial ruling, DIRECTV was denied the opportunity (or need) to litigate a pivotal issue in which a jury already found improper payment on the part of the bank.[19]

Accordingly, we remand the matter for trial only as to the limited issue of whether, under applicable law, DIRECTV can establish each element of equitable estoppel, such that Citibank is estopped from asserting the one-year statute of limitations of section 340(c) as a bar to DIRECTV's Commercial Code claim. If, after trial, no estoppel is found, and the action remains time-barred, the trial court should enter judgment in favor of Citibank. If, on

---

[19] Citibank contends remand is inappropriate because DIRECTV neglected to plead a cause of action for promissory estoppel. It is mistaken. Promissory estoppel and equitable estoppel are closely-related doctrines and arise from the same equitable origins. Generally speaking, however, promissory estoppel involves a statement of intention regarding future conduct. Equitable estoppel, on the other hand, is found where a party has, by its own statement or conduct, deliberately led another to believe a particular thing is true and to act upon that belief. In other words, the issue to be tried on remand is whether, by virtue of its misrepresentation of some existing fact, Citibank should be equitably estopped from asserting the statute of limitations to bar this action.

the other hand, DIRECTV's claim is not barred because Citibank is estopped from asserting the statute of limitations, the court should reinstate the jury verdict and judgment in favor of DIRECTV.[20]

## DISPOSITION

The judgment is reversed. The matter is remanded with directions to the trial court to conduct a trial on the affirmative defense of the statute of limitations. If the statute of limitations bars this action as filed beyond the one-year limitations period, and the bank is not estopped to assert that affirmative defense, the trial court is directed to enter judgment in favor of Citibank. If, on the other hand, the Commercial Code claim is not time-barred because Citibank is estopped to assert the statute of limitations, the trial court is directed to reinstate the jury verdict and judgment in favor of DIRECTV. Each party is to bear its own costs of appeal.

Cooper, P. J., and Rubin, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 22, 2004. George, C. J., did not participate therein.

---

[20] We have considered and reject DIRECTV's remaining argument.

There is no merit to DIRECTV's claim that the judgment must be affirmed because it also prevailed on an "independent" claim for breach of contract. Section 340(c) applies to distinct factual predicate present here, *i.e.,* actions by a depositor against its bank for the payment of a check bearing a forged endorsement. DIRECTV's contract claim, which is expressly predicated on and incorporates allegations related to Citibank's alleged breach of New York Uniform Commercial Code section 4-401 (creating strict liability against a bank that cashes a check bearing a forged endorsement) is untimely under this statute, regardless of the label attached to the claim. (See *Roy Supply, supra,* 39 Cal.App.4th at p. 1065, italics added [former section 340, subdivision 3 applies to action by depositor against bank in action involving payment of forged check, and "where the statute was applicable *it barred recovery* regardless whether the bank was negligent and it could not be defeated by artfully framing the pleadings."; *Allied Concord etc. Corp. v. Bank of America* (1969) 275 Cal.App.2d 1 [80 Cal.Rptr. 622] [in action by drawer of check against depository and collecting banks which negotiated a check bearing a forged endorsement, the court held that contract claim was barred by section 340, subdivision 3, regardless of status of bank against which it was brought].)

The same result obtains under New York law. (See, e.g., *Sony Corporation of America v. American Exp. Co.* (Civ. Ct., City of N.Y. 1982) 115 Misc.2d 1060 [455 N.Y.S.2d 227, 229–230] [whether framed in terms of the pre-UCC contractual relationship, or under N.Y.U. Com. Code, § 4-401(1), the rule is the same: As against its customer, a bank may charge the customer's account only items properly payable; a forged endorsement is wholly inoperative, *i.e.,* not properly payable.]; see also *Green Bus Lines v. General Motors Corp.* (N.Y. App. Div. 1991) 169 A.D.2d 758 [565 N.Y.S.2d 124, 125] ["In applying the Statute of Limitations, courts must look to the essence of the claim, and not the form in which it is pleaded."]; *Bryden v. Wilson Memorial Hosp.* (N.Y. App. Div. 1988) 136 A.D.2d 843 [523 N.Y.S.2d 686, 687] ["It is the gravamen or essence of the cause of action which is considered in determining the applicable statute of limitations."]; *Trott v. Merit Dept. Store* (N.Y. App. Div. 1985) 106 A.D.2d 158 [484 N.Y.S.2d 827, 829] (1985) ["form should not be exalted over substance and it is the reality and essence of the cause of action that is controlling" for purposes of determining the appropriate time limitation].)